**UNITED STATES of America, Plaintiff,**

v.

**CITY OF MILWAUKEE, a Municipal Corporation, Harold A. Breier, Chief of Police, City of Milwaukee Police Department, William Stamm, Chief, City of Milwaukee Fire Department, Marjorie L. Marshall, Charles W. Mentkowski, Richard Block, John Giacomo, and William I. Gore, Commissioners, City of Milwaukee Fire and Police Commission, Defendants.**

Civ. A. No. 74–C–480.

United States District Court,
E. D. Wisconsin.

Dec. 12, 1977.

William J. Mulligan, U. S. Atty., Milwaukee, Wis., Teresa M. Holland, Dept. of Justice, Washington, D. C., for plaintiff.

James B. Brennan, City Atty., by Maurice L. Markey, Asst. City Atty., Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

The complaint in this action alleges that the defendants City of Milwaukee, et al., have engaged in a pattern or practice of discrimination based on race and sex with respect to employment opportunities within the Milwaukee Fire and Police Departments, in violation of Title VII, 42 U.S.C. § 2000e et seq., as amended by the Equal Employment Opportunity Act of 1972; the provisions of the State and Local Fiscal Assistance Act of 1972, 31 U.S.C. § 1221 et seq.; the Omnibus Crime Control and Safe Streets Act of 1968; and the Fourteenth Amendment to the United States Constitu-

tion as interpreted in 42 U.S.C. §§ 1981 and 1983.

The only issue remaining for consideration by this Court is the right of police matrons working in the Milwaukee City Jail to receive the same wages as male jailers receive. The plaintiff moved for partial summary judgment on this issue. Oral argument was heard on October 21, 1977, at the close of which the Court announced that the motion would be denied. The parties having then informed the Court that they were prepared to commence trial, trial was held and the matter was taken under advisement.

The Court, having now considered the evidence presented at trial as well as the materials submitted in reference to the motion for partial summary judgment, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

(1) The police matron classification is a job classification within the Milwaukee Police Department which is filled exclusively by women.

(2) The jailers are male police officers who, although in theory available for transfer to other positions, are permanently assigned to the jail.

(3) There are currently nine jailers and nine matrons assigned to the jail.

(4) The matrons and jailers receive two weeks of in-service training and first aid training. The jailers, in addition, receive police patrolman training, i. e., a seventeen-week course at the police academy which qualifies them as police officers.

(5) The jailers are trained in the use of and are issued weapons; however, they are not permitted to carry their weapons while on duty in the jail. Rather, they are required to put their weapons under lock and key in the jailers' office or in their lockers at the jail.

(6) Matrons are neither trained in the use of nor issued weapons, although they do receive a weapon allowance identical to that received by jailers.

(7) In regard to the work performed at the jail, matrons and jailers perform substantially the same type of work; that is, they conduct body and custodial searches of prisoners, take inventory of property of prisoners, feed and give coffee to prisoners, supervise and handle the phone calls of prisoners, and check prisoners for obvious signs of illness or injury. The matrons perform such duties for the female prisoners and the jailers for the male prisoners. Additionally, matrons will occasionally assist in escorting male prisoners within the jail, and jailers will occasionally assist in subduing insubordinate female prisoners.

(8) One jailer on each shift is designated "head jailer" and in that capacity makes entries in the "day book," in which a record is kept of the comings and goings of prisoners. In the course of 1976, there were some 49,000 entries in the day book. Matrons do not, nor are they permitted to, perform the function of head jailer.

(9) The head jailer does not exercise supervisory authority over the other jailers or the matrons. Instead, the sergeant on duty at the Police Department, First District, which is located in the same building as the city jail, is responsible for the supervision of the jail and exercises supervisory authority in the event of an emergency situation.

(10) There are three shifts per day at the jail, one to three matrons per shift, and three to four jailers per shift. There are sixteen cells for female prisoners and ninety-five cells for male prisoners. On an average there are ten to fifteen female prisoners in the jail during any given shift and fifty to sixty male prisoners. Each matron is therefore responsible for an average of five to seven prisoners, and each jailer is responsible for an average of fifteen to twenty prisoners. Although on occasion there may be more female than male prisoners in the jail, on an average there is a substantially greater number of male than of female prisoners in the jail at any one time. If a matron is ill or absent for any reason, there is no substitute provided. If a jailer is ill or absent, a patrol officer not permanently assigned to the jail is assigned

as a temporary substitute. On occasion, one patrol officer in addition to those ordinarily assigned to the jail will be assigned if the number of male prisoners in the jail is greater than usual or if extra help is needed in processing bail applications.

(11) Matrons are required to be on call twenty-four hours per day and, if requested, must return to the jail at any time for duty. They also possess, but seldom exercise, the power of arrest.

(12) As police officers, jailers are on twenty-four hour duty pursuant to the rules of the Milwaukee Police Department which require them to carry their guns at all times while not on their standard shifts and to assist in arrests if an incident requiring the exercise of police authority occurs in their presence: However, this rule is effective as to all police officers and is not related to the duties of the jailers as jailers.

(13) Matrons are in Pay Range 800 with an annual starting salary of $11,813.30 and a maximum annual salary of $13,548.56. Jailers, as police officers, are in Pay Range 802 with an annual starting salary of $13,990.41 and a maximum salary of $16,381.57.

## CONCLUSIONS OF LAW

(1) Jailers and matrons fulfill substantially identical functions at the jail in terms of the type of work performed.

(2) The position of head jailer is a ministerial position. Further, it involves a minimal amount of time, and the extra duties performed by the head jailer are incidental to the actually assigned and performed duties of the jailers and are insubstantial in relation to those actually assigned and performed duties. Further, there has been no showing made that the matrons would not undertake the duties of the head jailer if permitted to do so. Therefore, the duties which the jailers perform as head jailer are insufficient in themselves to justify the pay differential between the salaries of matron and jailer.

(3) Although the jailers receive more training than do the matrons and are issued weapons, the greater amount of training and the issuance of weapons do not contribute to their functioning as jailers, and the greater amount of training does not create a skill differential which is relevant to the performance of their duties in the jail.

(4) Although the jailers process and care for a greater number of prisoners than do the matrons and, therefore, may perform a greater quantity of work than do the matrons, there has been no showing made that the matrons would be unwilling or unable to process and to care for a greater number of prisoners if required to do so by the defendant City of Milwaukee. Further, the differential, if any, in the quantity of work performed by the jailers and matrons results from the hiring policy of the defendant City of Milwaukee and the number of positions for jailers and matrons which it has chosen to create and not from a differential in training or ability between matrons and jailers. Under those circumstances, the possible difference in the quantity of work performed does not affect the determination of whether matrons and jailers perform equal work.

(5) The twenty-four hour active duty status of jailers, which results from their classification as police officers, is unrelated to their work as jailers and, therefore, has no effect on the issue of the entitlement of matrons to equal pay.

(6) On the basis of all of the conclusions set forth above, it further appears as a matter of law that matrons and jailers perform substantially equal work and in consequence that they are entitled to equal pay for the work performed by each.

## DECISION AND ORDER

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), provides:

"(a) It shall be an unlawful employment practice for an employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin * * *."

Section 2000e–2(h), 42 U.S.C., provides in part:

"(h) * * * It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29."

Section 206(d), 29 U.S.C., provides in part:

"(d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to * * * (iv) a differential based on any other factor other than sex * * *."

■ The provisions of Title VII regarding discrimination in compensation based on sex are to be construed in pari materia with the Equal Pay Act of 1963, 29 U.S.C. § 206(d). *Orr v. Frank R. MacNeill & Son, Inc.,* 511 F.2d 166 (5th Cir. 1975); *Di Salvo v. Chamber of Commerce of Greater Kansas City,* 416 F.Supp. 844 (W.D.Mo. 1976). Jobs are substantially equal and require equal pay if they require the same effort, skill, and responsibility. *Schultz v. American Can Company—Dixie Products,* 424 F.2d 356, 360 (8th Cir. 1970).

■ The evaluation of skill "includes consideration of such factors as experience, training, education, and ability. It must be measured in terms of the performance requirements of the job." 29 C.F.R. § 800.-125. The Court has found that jailers and matrons receive the same in-service and first aid training in preparation for their duties in the jail and have the same performance requirements. While jailers also receive patrol officer training, "[p]ossession of a skill not needed to meet requirements of the job cannot be considered in making a determination regarding equality of skill." 29 C.F.R. § 800.125; *Peltier v. City of Fargo,* 533 F.2d 374 (8th Cir. 1976). Further, the alleged flexibility, which possession of additional skills imparts, is not a valid criterion absent a showing that the flexibility is utilized with some frequency. *Schultz v. Wheaton Glass Company,* 421 F.2d 259 (3d Cir. 1970), cert. denied 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970); *Peltier v. City of Fargo,* supra. The training which jailers receive as patrol officers is not utilized by them at the jail, nor are they assigned with any frequency to duties outside the jail. In effect, the assignment to the jail is a permanent assignment.

■ The evaluation of responsibility "is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 800.129. The Court has found, and defendants have conceded with the exception of head jailer duties, that jailers and matrons perform the same types of duties within the jail—the jailers for male prisoners and the matrons for female prisoners. The added responsibilities of the head jailer are insubstantial. Further, the Court will not permit the defendants to rely on the failure of the matrons to perform head jailer duties, as the matrons are willing and able to perform such duties and are prevented from so doing by the defendants. Finally, the matrons are neither subordinate to nor under the authority of the jailers. They have equal and independent authority for the performance of on-the-job duties, and both groups are subject to the on-the-job supervision of the district desk sergeant in the event of a jail emergency.

The evaluation of "effort" is concerned with the amount or degree of effort required to be expended in the performance of the job and includes consideration of both the physical and mental exertion needed for performance of the job. 29 C.F.R. § 800.127. Matrons and jailers perform the same types of duties and therefore engage

in the same kinds of effort in the performance of their jobs. The occasional assistance given by jailers to matrons in subduing insubordinate female prisoners is insufficient to justify a finding of unequal effort. See 29 C.F.R. § 800.128. As for the greater volume of male than of female prisoners, the Court considers it irrelevant to a determination of the equal work issue under the circumstances of this case, for the reason that a specified volume of work to be performed is not a pre-condition of employment for either jailers or matrons. They are hired to perform certain duties with respect to whatever number of male and female prisoners may be in the jail, and it is therefore the nature of those duties rather than the number of prisoners who may happen to pass through the jail which is significant to a determination of whether or not the jailers and matrons perform equal work.

In addition to asking the Court to order defendants hereafter to pay to police matrons the same wages as are paid patrol officers of comparable years of service assigned to the jail, plaintiff has asked for the relief of back pay to such matrons, calculated as the difference between what they earned and what they would have earned on the patrol officer wage scale, plus interest, from two years preceding the date of the filing of this action, i. e., from October 17, 1972, to the present.

■ Section 706(g) of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(g), provides in part:

"(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative relief as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay  *   *   *  or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission.  *   *   * "

As interpreted by the United States Supreme Court in *Albemarle Paper Co. v. Moody,* 422 U.S. 405,. 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), 42 U.S.C. § 2000e–5(g) does not condition an award of back pay on a finding of bad faith by the employer:

"  *   *   *  If backpay were awardable only upon a showing of bad faith, the remedy would become a punishment for moral turpitude, rather than a compensation for workers' injuries. This would read the 'make whole' purpose right out of Title VII, for a worker's injury is no less real simply because his employer did not inflict it in 'bad faith.' Title VII is not concerned with the employer's 'good intent or absence of discriminatory intent' for 'Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation.' *Griggs v. Duke Power Co.,* 401 U.S. 424, at 432, 91 S.Ct. 849, 28 L.Ed.2d 158.  *   *   * " 422 U.S., at 422–423, 95 S.Ct. at 2374.

See also *Waters v. Wisconsin Steel Works of International Harvester Co.,* 502 F.2d 1309, 1321 (7th Cir. 1974). The Court is therefore of the opinion that the plaintiff is entitled to the relief which it requests.

For the foregoing reasons,

IT IS ORDERED that police matrons employed by the City of Milwaukee be compensated henceforth at the same rate of pay as that received by patrol officers of comparable years of service who are assigned to the jail.

IT IS FURTHER ORDERED that the matrons receive back pay in an amount calculated as the difference between what they earned on the police matron wage scale and what they would have earned on the patrol officer wage scale, plus interest, from October 17, 1972, to the present.