643 P.2d 723

**ARIZONA CIVIL RIGHTS DIVISION, DEPARTMENT OF LAW, State of Arizona, Plaintiff-Appellant,**

v.

**John OLSON, Brad Stewart and Bruce Evans, in their capacity as the Yavapai County Board of Supervisors, Robert Scott, former Sheriff of Yavapai County, H. "Curley" Moore, Sheriff of Yavapai County, and Yavapai County, a County of the State of Arizona, Defendants-Appellees.**

No. 1 CA–CIV 4697.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 28, 1982.

Rehearing Denied March 12, 1982.

Review Denied April 6, 1982.

Robert K. Corbin, Atty. Gen. by Arthur G. Garcia, former Executive Director, Philip A. Austin, Executive Director, Arizona Civil Rights Div., Therese L. Martin, Charles M. Santaguida, Asst. Attys. Gen., Phoenix, for plaintiff-appellant.

Stan A. Lehman, Prescott, for defendants-appellees.

## OPINION

CONTRERAS, Judge.

At issue is whether the trial court erred in dismissing appellant's employment discrimination complaint for failure of the underlying charge to state a claim. We find that the charge does state a claim under the Arizona Civil Rights Act, A.R.S. §§ 41–1401 *et seq.*, and therefore reverse.

## FACTUAL BACKGROUND

On April 29, 1976, Gertrude Alexander, an employee of the Yavapai County Sheriff's Office, filed a charge with the Arizona Civil Rights Division (Division) stating, in pertinent part:

> I feel that I have been discriminated against because of my sex (female) in the terms and conditions of my employment in that I am not paid the same amount as male employees who perform the same type of work that I do.

The Division determined that it had jurisdiction to process the charge, notified appellees of the charge, and conducted an investigation.

On April 15, 1977, the Division issued a document designated Findings of Fact which contained a determination of reasonable cause to believe discriminatory practices had occurred. A copy of this document was mailed to appellees, together with

a proposed conciliation agreement. Appellees did not respond and, on April 28, 1977, the Division filed its complaint in superior court.

On February 22, 1978, the Division mailed appellees a copy of a proposed consent decree. This was not accepted by appellees. However, on June 20, 1978, appellees mailed a counterproposal in the form of an amended consent decree to the Division. The counterproposal was rejected by the Division and it then filed a Notice of Failure of Negotiations.

On July 26, 1978, appellees filed a Motion to Dismiss and/or Motion to Strike. After oral argument, the trial court dismissed the complaint by minute entry dated September 18, 1978. The Division filed a Motion for New Trial/Motion for Rehearing, on which oral argument was again heard. On December 18, 1978, the trial court entered final judgment dismissing the action with prejudice. This appeal follows.

## GROUNDS FOR DISMISSAL

Appellees moved to dismiss the complaint on four grounds, which, along with appellees' supporting contentions, will first be profiled and then discussed in order.

1. The complaint fails to state a claim upon which relief can be granted in that the subject matter of the complaint does not come within the purview of the Civil Rights Act.

Appellees contended that the complaint alleged no more than that the position of matron/clerk which the charging party held was "misclassified" within the county employment system, and that the complaint alleged no discrimination under the Act.

2. The action is barred by the express language contained in A.R.S. § 41-1481.

Appellees contended that the statute immunizing the state from suit likewise immunized political subdivisions of the state, including Yavapai County and its Sheriff's Office.

3. A.R.S. § 41-1401 et seq., commonly known as the Arizona Civil Rights Act of 1974, is in violation of the Fourteenth Amendment of the Constitution of the United States, denying Defendants' right to due process of law.

Appellees contended that they were denied an impartial administrative hearing before the Division, and that the Division acted as both prosecutor and judge in determining that there was reasonable cause to believe that discrimination had occurred.

4. The complaint should be dismissed for failure of the Civil Rights Division to negotiate in good faith.

Appellees contended that the actions of the Division between the time of its determination of reasonable cause and the time the complaint was filed did not constitute good faith negotiation.

The trial court, in dismissing the complaint, accepted appellees' first ground and did not consider the other three. The minute entry of September 18, 1978, provides, in pertinent part:

Gertrude Alexander's complaint is that the County had "misclassified" the position of Matron/Clerk and that its duties and prerequisites placed it in a different Range and Step. This is NOT a complaint of sex discrimination as envisioned by the Arizona Statutes Sec. 41-1461 et seq. Plaintiff filed the within action pursuant to those statutes and plaintiff has no other basis for proceedings.

IT IS THEREFORE ORDERED granting defendant's Motion to Dismiss and dismissing the within cause with prejudice.

Because of the foregoing decision, the other grounds raised by defendant are not ruled upon.

The judgment and order of December 18, 1978, specified no grounds for dismissal, and presumably adopted the same reasoning as set forth in the foregoing quoted minute entry.

## SCOPE OF REVIEW

The Division's response to the motion to dismiss was supplemented with eleven exhibits, including copies of the charge, the Division's findings of fact, proposed conciliation and consent decrees, newspaper

**24**

articles, and affidavits. The trial court, therefore, and pursuant to Rule 12(b), Arizona Rules of Civil Procedure, properly treated the motion as one for summary judgment.

Regardless of who may have the burden of proof at trial, a party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists and that, based on the undisputed facts, the movant is entitled to judgment as a matter of law. *Chanay v. Chittenden*, 115 Ariz. 32, 563 P.2d 287 (1977); *City of Phoenix v. Space Data Corp.*, 111 Ariz. 528, 534 P.2d 428 (1975).

 If there is the slightest doubt as to whether there is an issue of fact in ruling on a motion for summary judgment, that doubt should be resolved in favor of a trial on the merits. *Jabczenski v. Southern Pacific Memorial Hospitals, Inc.*, 119 Ariz. 15, 579 P.2d 53 (App.1978). The party opposing summary judgment has the duty to bring to the attention of the trial court those portions of the record or controverting affidavits which will support his position that a disputed issue of material fact exists. *Bible v. First National Bank of Rawlins*, 21 Ariz. App. 54, 515 P.2d 351 (1973).

## ALEXANDER'S COMPLAINT [CHARGE]

In order to better understand rulings by the trial court and this court, it is necessary to clarify terminology used. The document by which an individual complains in writing to the Division of an alleged unlawful employment practice (also termed a discrimination practice) is termed a "Charge," and is referred to as such in this decision. A.R.S. §§ 41–1471 and –1481. The term "complaint" refers to the formal complaint which the Division filed in superior court against appellees. We note that some confusion has been generated because the printed form adopted by the Division for filing a "Charge of Discrimination" is labeled a "Complaint of Discrimination."

██ Appellees' motion to dismiss was granted on the stated ground that Gertrude Alexander's charge [1] did not allege sex discrimination under the Arizona Civil Rights Act. Consequently, the trial court reasoned, the Division had no jurisdiction to investigate her charge or to file a complaint against appellees. We disagree.[2]

That the trial court did not believe that Alexander's charge alleged sex discrimina-

---

1. While appellees' counsel, in oral argument on the motion to dismiss, apparently argued that the Division's complaint in superior court did not allege sex discrimination, the court, as was made clear during the hearing on the motion for new trial, was referring not to the Division's complaint, but to Alexander's complaint to the Division—what is properly referred to as the "charge." A.R.S. § 41–1481. During the hearing on the motion for new trial, the trial judge stated:

 From reading the complaint in this matter, it became obvious to me that the initiating document, the reason the Division had anything—knew that Yavapai County had a sheriff system, or anything like that was because this young lady filed her charge, and under the law that is one of the ways that the Division gets jurisdiction to do something. And, in this case, the action of the Division was predicated upon this lady's charge. And, without going further in this case, the jurisdiction, and the right to proceed depended upon that charge, that charge not alleging sex discrimination, but misclassification, there was no jurisdiction in the Division to proceed and thus none in this lawsuit.

2. We start with the proposition that a charge may be informal and will be interpreted liberally so as to bring it within the scope of the Act. "All that is required is that it give sufficient information to enable [the Division] to see what the grievance is about." *Jenkins v. United Gas Corp.*, 400 F.2d 28, 30, n. 3 (5th Cir. 1968); *Georgia Power Co. v. EEOC*, 412 F.2d 462 (5th Cir. 1969). "The purpose of the charge under section 706 [cf. A.R.S. § 41–1481(B)] is only to initiate the . . . investigation, not to state sufficient facts to make out a prima facie case." *Graniteville Co. v. EEOC*, 438 F.2d 32, 38 (4th Cir. 1971).

 Since case law in the area of equal employment opportunity is sparse in Arizona and because the Arizona Civil Rights Act, A.R.S. §§ 41–1401 *et seq.*, is modeled after and, generally, identical to the federal statute in the area (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, commonly and hereafter referred to as "Title VII"), federal courts' construction of the federal statute is persuasive in construing the Arizona Act. *Mileham v. Arizona Board of Pardons and Paroles*, 110 Ariz. 470, 520 P.2d 840 (1974); *Phoenix-Sunflower Industries, Inc. v. Hughes*, 105 Ariz. 334, 464 P.2d 617 (1970).

tion is evident from the language of the minute entry dismissing the Division's complaint, and from the following comment during oral argument on the motion to dismiss:

> THE COURT: ... the Complaint [Charge] was not discrimination based on sex. It was discrimination based on pay. She didn't say that, "They aren't hiring women. I was turned down because I was a woman."
>
> She says, "I'm not getting paid as much as men who do the same thing."
>
> And the next thing, we have the County in on not hiring women, which is a non-sequitur if I have ever heard one.

■ The trial court apparently conceded that discrimination in hiring, on the basis of sex, would be "sex discrimination" and not just "hiring discrimination," but found that discrimination in pay, on the basis of sex, was not "sex discrimination" but just "pay discrimination." We fail to see the logic of that distinction, and, more pointedly, we find that such an employment practice is prohibited by statute. A.R.S. § 41–1463(B) provides:

> § 41–1463 ...
>
> B. It is an unlawful employment practice for an employer:
>
> 1. To fail or refuse to hire or to discharge any individual, *or otherwise to discriminate* against any individual *with respect to his compensation,* terms, conditions or privileges of employment *because of* such individual's race, color, religion, *sex* or national origin.
>
> 2. To limit, segregate, or *classify* his *employees* or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of* such individual's race, color, religion, *sex* or national origin.

3. We think such a construction is tortured to begin with. Alexander's charge made no mention of "classification," but rather alleged in a straightforward manner that she was paid less than men for the same work. The issue of

(emphasis supplied). Alexander's charge with the Division clearly alleged discrimination "with respect to ... compensation ... because of ... sex." Sex was alleged as the basis or criterion for discrimination, and compensation as the medium or instrument of discrimination. Alexander's charge therefore alleged an unlawful employment practice under A.R.S. § 41–1463(B)(1).

■ Appellees' contention that Alexander's charge alleged only "misclassification" is likewise untenable. Even if the charge is construed to allege only that the position of matron/clerk is misclassified as grade 12 while the position of jailer is classified as grade 14,[3] the charge still alleges sex discrimination under A.R.S. § 41–1463(B)(2) which makes it an unlawful employment practice to "classify ... employees ... because of ... sex...."

■ The Arizona Civil Rights Act, like Title VII on which it is patterned, should be read in pari materia with the federal Equal Pay Act of 1963, 29 U.S.C. § 206(d). The Bennett Amendment (42 U.S.C. § 2000e–2(h)) made Equal Pay Act standards applicable to Title VII equal pay claims.

> Although the [federal] Civil Rights Act is much broader than the Equal Pay Act, its provisions regarding discrimination based on sex are in pari materia with the Equal Pay Act.... Since both statutes serve the same fundamental purpose against discrimination based on sex, the Equal Pay Act may not be construed in a manner which by virtue of § 703(h) [identical to A.R.S. § 41–1463(H)] would undermine the Civil Rights Act.

*Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 266 (3rd Cir. 1970), *cert. denied,* 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970).

Likewise, the Arizona Civil Rights Act, after defining unlawful employment practices, provides the following exception:

> § 41–1463 ...

"misclassification" did not arise until the motion to dismiss. The Division's findings of fact, attached to the response to the motion, clearly indicated that "matrons" were female and "jailers" male.

H. . . . It is not an unlawful employment practice under this article for any employer to differentiate upon the basis of sex in determining the amount of wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 6(d) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 206(d)).

29 U.S.C. § 206(d) provides:

No employer having employees subject to [the minimum wage provisions of the Fair Labor Standards Act] shall discriminate, within any establishment . . ., between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. . . .

The same section nevertheless permits differences in wages if paid pursuant to:

(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex. . . .

■ Thus, in determining if a given factual situation reveals sex discrimination in pay under the Arizona Civil Rights Act or Title VII, we look to the Equal Pay Act and cases which interpret it. *Orr v. Frank R. MacNeill & Son, Inc.*, 511 F.2d 166 (5th Cir. 1975), *cert. denied*, 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975); *Ammons v. Zia Co.*, 448 F.2d 117 (10th Cir. 1971); *Shultz v. Wheaton Glass Co., supra.*

Numerous courts have disallowed classification systems which relegate women to lower paying jobs even though they do substantially the same work. *Peltier v. City of*

*Fargo*, 533 F.2d 374 (8th Cir. 1976); *Wetzel v. Liberty Mutual Ins. Co.*, 449 F.Supp. 397 (W.D.Pa.1978); *U. S. v. City of Milwaukee*, 441 F.Supp. 1371 (E.D.Wis.1977); *Mize v. State Div. of Human Rights*, 38 A.D.2d 278, 328 N.Y.S.2d 983 (1972), *relevant part aff'd but for back ·pay*, 31 N.Y.2d 1032, 342 N.Y. S.2d 65, 294 N.E.2d 851, *modified to award back pay*, 33 N.Y.2d 53, 55, 349 N.Y.S.2d 364, 304 N.E.2d 231 (1973).

■ In applying the test of "substantial equality," it is job content, and not job description or title, which is controlling. *Hodgson v. Miller Brewing Co.*, 457 F.2d 221 (7th Cir. 1972); *Shultz v. American Can Co.—Dixie Products*, 424 F.2d 356 (8th Cir. 1970); *Brennan v. Braswell Motor Freight Lines, Inc.*, 5 EPD ¶ 8064 (N.D.Tex.1972). Even a "merit system" civil service classification scheme has been held to offer no shield to a finding of a violation of Title VII if the job duties, in actuality, are substantially the same. *Marshall v. Kent State Univ.*, 589 F.2d 255 (6th Cir. 1978).

■ Thus, it is impermissible, under Title VII and the Equal Pay Act, for a police department or county sheriff's office to utilize different pay scales for male jailers and female matrons performing substantially the same duties. *U. S. v. City of Milwaukee, supra; Janich v. Sheriff of Yellowstone County*, 17 EPD ¶ 8390 (D.Mont. 1977).[4]

The trial court in the case before us appears to have relied upon the fact that appellees' written job requirements do not mandate that a matron be female (despite the fact that, in common usage, a "matron" is a woman) or a jailer be male. Such reliance is indicated by the trial judge's comment during the hearing on the motion for new trial:

There is no requirement, as I read the findings, and what was before me, that a

---

4. Even if the charge did not allege that matrons' and jailers' work was "substantially equal," and therefore would not allege an Equal Pay Act violation, an allegation of discriminatory compensation attributable to intentional sex discrimination would allege a Title VII violation. *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). *Gunther* upheld the Title VII claims of matrons in a county jail, whether or not their work was "equal" to that of jailers. Similarly, we believe that a violation of Arizona's Civil Rights Act would be alleged.

matron be a woman and that a jailer be a man.

■ This statement implies that, therefore, the classification is not based upon sex—a conclusion which is contradicted by actual practices. In this regard, appellees do not dispute the fact that only males were jailers and only females were matrons in the Yavapai County Sheriff's Office. A classification system which does not make sex an explicit job requirement is still unlawful if, in practice, that system is applied to limit job opportunities to one sex only.

Constraints on the use of sexually biased classifications are implicit in the Equal Pay Act's requirement of equal pay for work that is "substantially equal." Employers cannot escape the requirements of the Act by giving male and female jobs different titles or by inserting additional tasks in the job descriptions of males if those tasks are insignificant in the performance of their jobs. The determination that work is equal or unequal within the meaning of the Act is made by reference to job content, and the employer's own characterizations of job content are not treated as conclusive. Comment, Equal Pay for Comparable Work, 15 Harv.Civ.Rts.-Civ.Lib.L.R. 475, 485 (1980).

■ The trial court apparently found it significant that Alexander, the charging party, had never applied for the higher paying but equivalent, position. During the hearing on the motion for new trial, the trial judge stated:

> The fact remains that she didn't apply to be a jailer, so she was not discriminated against because she was a woman instead of a man.

From our review of Equal Pay Act cases, we cannot conclude that there is any such requirement. Appellees rely on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for the proposition that an application for such position is required. Such reliance is misplaced. *McDonnell Douglas* only suggested examples of the elements of a prima facie case of disparate treatment in a private,

single-plaintiff action. This is not such a case.

■ Thus, it is established that an allegation that female matrons performed, for less pay, work equal to that done by male jailers states a violation of Title VII. *County of Washington v. Gunther, supra; Janich v. Sheriff of Yellowstone County, supra; U. S. v. City of Milwaukee, supra;* cf. *Howard v. Ward County*, 418 F.Supp. 494 (D.N.D.1976). In our opinion, such an allegation states a violation of the Arizona Civil Rights Act as well.

## THE DIVISION'S COMPLAINT

Our conclusion that Alexander's "charge" filed with the Division alleged sex discrimination under the Act compels the conclusion that the Division's complaint likewise alleged sex discrimination. Paragraph VIII of the "First Cause of Action" set forth in the Division's complaint repeats the allegations of Alexander's charge and is sufficient for the same reasons.

The remainder of the Division's complaint clearly exceeds the scope of Alexander's charge, which was limited to discrimination between jailers and matrons. The second cause of action alleged discrimination between male and female dispatchers. The third cause of action alleged that no woman had ever been hired for certain deputy positions. The fourth cause of action concerned more general continuing employment and pay discrimination throughout the sheriff's department.

■ A suit brought by the enforcement agency is not limited strictly to the scope of the initial charge. Rather, its parameters are coextensive with the scope of the agency investigation reasonably resulting from the charge. Allegations in the complaint must have been included in the reasonable cause determination. *EEOC v. Chesapeake and Ohio Ry. Co.*, 577 F.2d 229 (4th Cir. 1978); *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976).

Courts have generally determined that the parameters of the civil action in . . .

court are defined by the scope of the . . . investigation which can reasonably be expected to grow out of the charge of discrimination. . . .

*Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3rd Cir. 1976), *cert. denied* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); *also Gamble v. Birmingham Southern R. R. Co.*, 514 F.2d 678 (5th Cir. 1975); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970).

In dismissing the Division's complaint in its entirety, the trial court did *not* find that the second, third, and fourth causes of action exceeded the scope of the Division's investigation reasonably resulting from Alexander's charge. Indeed, such an argument was not developed by appellees, either in their motion to dismiss or on appeal. Rather, the trial court concluded that the first cause of action failed to allege prohibited discrimination, and that the remaining causes of action, based on the first, must likewise fail.

Since the trial court, relying exclusively on appellees' argument that Alexander's charge did not allege sex discrimination, erroneously dismissed the complaint for failure to state a claim, we need not and, indeed, cannot decide whether the second, third, and fourth causes of action should be dismissed on some ground not argued by appellees, such as exceeding the scope of the investigation. Reinstatement of the complaint in its entirety, at this stage of the proceedings, does not necessarily imply that all four causes of action would survive a future motion to dismiss on grounds not heretofore raised. These are matters which initially must be determined by the trial court after the parties have more fully developed and presented their respective positions. At the present time, the record before us is insufficient for us to express an opinion as to the viability of the Division's second, third, and fourth causes of action.

## IMMUNITY OF COUNTY

Since we have determined that the trial court erred in dismissing the complaint on the ground that the charge did not allege sex discrimination under the Arizona Civil Rights Act, we deem it advisable to further consider whether dismissal was justified on any of the other three grounds which *were* raised by appellees. We conclude that it was not.

■ Appellees' contention that suit against Yavapai County was expressly barred by A.R.S. § 41–1481(D) was raised in their motion to dismiss, but was not considered by the trial court. The statute in question provides:

§ 41–1481 . . .

D. If within thirty days after the division has made a determination that reasonable cause exists to believe that the charge is true the division has not accepted a conciliation agreement to which the charging party and the respondent are parties, the division may bring a civil action against the respondent, *other than the state*, named in the charge. . . .

(emphasis supplied). It is not disputed that Yavapai County is a political subdivision of the state. Appellees contend that the county therefore shares the state's immunity from suit. We disagree.

This very question has recently been addressed by the Arizona Supreme Court, which held that the term "state" as used in A.R.S. § 41–1481(D) does not include political subdivisions of the state. *Amphitheater Unified School District No. 10 v. Harte*, 128 Ariz. 233, 624 P.2d 1281 (1981).

## UNCONSTITUTIONALITY

■ Appellees' contention that the Division's ex parte determination of reasonable cause, without affording them a hearing, denied them due process of law was raised in their motion to dismiss, but was not considered by the trial court, and has apparently been abandoned on appeal. We note that the Division's action was simply investigative, and its determination was simply a jurisdictional prerequisite to its filing a complaint, and in no way deprived

appellees of life, liberty, or property.[5] Appellees' due process contention was therefore without merit.

### FAILURE TO NEGOTIATE IN GOOD FAITH

Appellees' contention that the Division's complaint is invalidated by its failure to negotiate in good faith was raised in their motion to dismiss, but was not considered by the trial court. Appellees contend that the Division failed to negotiate in good faith between April 15, 1977 (the date of the determination of reasonable cause) and April 28, 1977 (the date the complaint was filed in superior court), and that this is the only relevant time period to be considered with respect to good faith negotiation.

The Arizona Civil Rights Act explicitly directs the Division to use informal methods to eliminate what is reasonably believed to be an unlawful employment practice. A.R.S. § 41–1481(B) provides, in pertinent part:

> § 41–1481 . . .
>
> B. . . . If the division determines after such investigation that there is reasonable cause to believe that the charge is true, it shall enter an order containing its findings of fact and shall endeavor to eliminate the alleged unlawful employment practice by informal methods of conference, conciliation and persuasion. . . .

Thus, as of April 15, 1977, the date of the Division's determination of reasonable cause, the Division was obligated to attempt conciliation. Federal courts have recognized that Congress intended to prefer dispute settlement and voluntary compliance, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and have made a good faith effort by EEOC to conciliate a condition precedent to an EEOC enforcement suit. *EEOC v. Zia Co.*, 582 F.2d 527 (10th Cir. 1978); *EEOC v. Hickey-Mitchell Co.*, 507 F.2d 944 (8th Cir. 1974); *EEOC v. U. S. Pipe & Foundry Co.*, 375 F.Supp. 237 (N.D.Ala.1974); *EEOC v. Container Corp. of America*, 352 F.Supp. 262 (M.D.Fla.1972). It has been held that EEOC must complete reasonable conciliation attempts before filing suit. *EEOC v. E. I. DuPont de Nemours & Co.*, 373 F.Supp. 1321 (D.Del.1974), aff'd, 516 F.2d 1297 (3rd Cir. 1975); *EEOC v. Container Corp. of America, supra.* However, because of an obvious difference between the federal and Arizona civil rights laws, we are of the opinion that the conciliation strictures of federal law should not be applied per se in Arizona cases.

■ The Division filed its complaint in superior court on April 28, 1977, 13 days after the determination of reasonable cause, because of the statute of limitations contained in A.R.S. § 41–1481(D):

> § 41–1481 . . .
>
> D. . . . In no event shall any action be brought pursuant to this article more than one year after the charge to which the action relates has been filed. . . . [6]

Appellees argue that the filing of the complaint terminates the period within which the Division must have attempted conciliation. We disagree. Unlike the Arizona

---

**5.** *Cf. Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). The agency's investigative powers are to be broadly construed. *Local No. 104, Sheet Metal Workers Int'l Ass'n, AFL–CIO v. EEOC*, 439 F.2d 237 (9th Cir. 1971). There is no constitutional prohibition against statutory authorization of agency investigations of possible discrimination based upon nothing more than official curiosity. *Bowaters Southern Paper Corp. v. EEOC*, 428 F.2d 799 (6th Cir. 1970), *cert. denied*, 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970), *citing United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). The same principles are applicable to investigations by

state civil rights agencies. *Atchison, Topeka and Santa Fe Ry. Co. v. Kansas Commission on Civil Rights*, 215 Kan. 911, 529 P.2d 666 (1974), *adhered to*, 217 Kan. 15, 535 P.2d 917 (1975).

**6.** Since the charging party (Gertrude Alexander) filed her charge with the Division on April 29, 1976, it is clear that the Division would be precluded from maintaining any action after April 29, 1977. It appears that the one-year limitation was placed in the Arizona Civil Rights Act to encourage expeditious investigation and resolution of charges as opposed to the federal practice of inordinate and extensive delays in its investigative procedures.

Civil Rights Act, Title VII has no statute of limitations, and therefore federal decisions requiring *completion* of conciliation attempts *before* filing suit are not persuasive in determining this issue of state law. A.R.S. § 41–1481(D) clearly contemplates further conciliation attempts *after* filing the suit.

§ 41–1481 . . .

D. . . . Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the further efforts of the parties or the division to obtain voluntary compliance.

In this case, the Division clearly did not intend to terminate conciliation attempts by filing its complaint in superior court. The parties stipulated that appellees would not have to respond to the Division's complaint until a failure of negotiations had occurred. Therefore, in considering whether the Division negotiated in good faith, we will consider all conciliation attempts up to June 27, 1978, when the Division filed its Notice of Failure of Negotiations.

On April 15, 1977, the Division sent appellees a proposed conciliation agreement, to which appellees did not respond. After suit had been filed, the Division, on February 22, 1978, sent appellees a proposed consent decree. On June 20, 1978, appellees sent the Division an alternative proposed consent decree, which the Division rejected. While it is the good faith of the Division, and not that of appellees, which is primarily at issue, we think that appellees' public comments strongly suggest that any tardiness on the Division's part in pursuing conciliation was due to a reasonable belief on the part of the Division that such conciliatory efforts would be unavailing.

We are unable to say that, as a matter of law, the Division failed to negotiate in good faith so as to justify dismissal of its complaint. The affidavits and exhibits attached to the Division's response to the motion to dismiss were sufficient to make the Division's good faith negotiation a disputed issue of material fact precluding summary judgment. *EEOC v. Zia Co., supra; EEOC v. Eagle Iron Works,* 367

F.Supp. 817 (S.D.Iowa 1973). We further note that even if the Division failed to negotiate in good faith, the trial court could stay the proceedings, pursuant to A.R.S. § 41–1481(D), for further conciliation efforts, rather than dismiss the complaint. *EEOC v. Zia Co., supra; EEOC v. Canadian Indemnity Co.,* 407 F.Supp. 1366 (C.D.Cal. 1976).

## CONCLUSION

Since we have determined that dismissal was not justified either on the ground relied upon by the trial court or on any other grounds raised by appellees in their motion to dismiss, we reverse the judgment dismissing the Division's complaint and remand the matter to the trial court for further proceedings. We do not at this time address appellees' claim that a portion of the complaint sought relief (an affirmative action hiring program) expressly prohibited by statute. We consider that claim premature. If, after trial, the trial court determines that there have been prohibited employment practices, it can then fashion appropriate relief.

FROEB and WREN, JJ., concur.