SHAW, ACTING COMMISSIONER, NEW YORK STATE
DIVISION OF HUMAN RIGHTS, ET AL. *v.*
DELTA AIR LINES, INC., ET AL.

No. 81–1578.   Argued January 10, 1983—Decided June 24, 1983*

---

*Together with *Shaw, Acting Commissioner, New York State Division of Human Rights* v. *Burroughs Corp.;* and *Shaw, Acting Commissioner, New York State Division of Human Rights, et al.* v. *Metropolitan Life Insurance Co.*, also on appeal from the same court (see this Court's Rule 10.6).

86

*Deborah Bachrach*, Assistant Attorney General of New York, argued the cause for appellants. With her on the briefs were *Robert Abrams*, Attorney General, and *Peter Bienstock*, *Robert Hermann*, *Peter H. Schiff*, and *Daniel Berger*, Assistant Attorneys General.

*Gordon Dean Booth, Jr.*, argued the cause for appellees. With him on the brief for appellees Delta Air Lines, Inc., et al. was *William H. Boice*. *Robert C. Bernius*, *William E. McKnight*, and *Robb M. Jones* filed a brief for appellee Burroughs Corp. *Edward Silver*, *Sara S. Portnoy*, and *Jeffrey A. Mishkin* filed a brief for appellee Metropolitan Life Insurance Co.†

---

†Briefs of *amici curiae* urging reversal were filed by *LeRoy S. Zimmerman*, Attorney General, and *Ellen M. Doyle* for the Commonwealth of Pennsylvania et al.; by *Mary L. Heen, Joan E. Bertin*, and *Isabelle Katz Pinzler* for the American Civil Liberties Union et al.; and by *J. Albert Woll, Marsha Berzon, Laurence Gold*, and *John Fillion* for the American Federation of Labor and Congress of Industrial Organizations et al.

Briefs of *amici curiae* urging affirmance were filed by *Solicitor General Lee, Stuart A. Smith, T. Timothy Ryan, Jr., Kerry L. Adams*, and *John*

JUSTICE BLACKMUN delivered the opinion of the Court.

New York's Human Rights Law forbids discrimination in employment, including discrimination in employee benefit plans on the basis of pregnancy. The State's Disability Benefits Law requires employers to pay sick-leave benefits to employees unable to work because of pregnancy or other nonoccupational disabilities. The question before us is whether these New York laws are pre-empted by the federal Employee Retirement Income Security Act of 1974.

## I

## A

The Human Rights Law, N. Y. Exec. Law §§ 290–301 (McKinney 1982 and Supp. 1982–1983), is a comprehensive antidiscrimination statute prohibiting, among other practices, employment discrimination on the basis of sex. § 296.1 (a).[1] The New York Court of Appeals has held that a private employer whose employee benefit plan treats pregnancy differently from other nonoccupational disabilities engages in sex discrimination within the meaning of the Human Rights Law. *Brooklyn Union Gas Co.* v. *New York State Human Rights Appeal Board,* 41 N. Y. 2d 84, 359 N. E. 2d 393 (1976). In contrast, two weeks before the decision in *Brooklyn Union Gas,* this Court ruled that discrimination based on pregnancy was not sex discrimination under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended,

---

*A. Bryson* for the United States; by *Eugene B. Granof* and *George J. Pantos* for the ERISA Industry Committee et al.; and by *Walter P. DeForest* and *Stuart I. Saltman* for Westinghouse Electric Corp.

[1] Section 296.1 (McKinney 1982) provides:

"1. It shall be an unlawful discriminatory practice:

"(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

42 U. S. C. § 2000e *et seq. General Electric Co.* v. *Gilbert,* 429 U. S. 125 (1976).[2] Congress overcame the *Gilbert* ruling by enacting § 1 of the Pregnancy Discrimination Act of 1978, 92 Stat. 2076, 42 U. S. C. § 2000e(k) (1976 ed., Supp. V), which added subsection (k) to § 701 of the Civil Rights Act of 1964.[3] See *Newport News Shipbuilding and Dry Dock Co.* v. *EEOC,* 462 U. S. 669, 678 (1983). Until that Act took effect on April 29, 1979, see § 2(b), 92 Stat. 2076, the Human Rights Law in this respect had a reach broader than Title VII.

The Disability Benefits Law, N. Y. Work. Comp. Law §§ 200–242 (McKinney 1965 and Supp. 1982–1983), requires employers to pay certain benefits to employees unable to work because of nonoccupational injuries or illness. Disabled employees generally are entitled to receive the lesser of $95 per week or one-half their average weekly wage, for a maximum of 26 weeks in any 1-year period. §§ 204.2, 205.1. Until August 1977, the Disability Benefits Law provided that employees were not entitled to benefits for pregnancy-related disabilities. § 205.3 (McKinney 1965). From August 1977 to June 1981, employers were required to provide eight weeks of benefits for pregnancy-related disabilities.

---

[2] The New York court in *Brooklyn Union Gas* noted the *Gilbert* decision, but declined to follow it in interpreting the analogous provision of the Human Rights Law. 41 N. Y. 2d, at 86, n. 1, 359 N. E. 2d, at 395, n. 1. Most state courts have done the same. See *Minnesota Mining & Manufacturing Co.* v. *State,* 289 N. W. 2d 396, 399, n. 2 (Minn. 1979) (collecting cases), appeal dism'd, 444 U. S. 1041 (1980).

[3] Subsection (k) provides in relevant part:

"The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title shall be interpreted to permit otherwise."

1977 N. Y. Laws, ch. 675, §29 (formerly codified as N. Y. Work. Comp. Law §205.3). This limitation was repealed in 1981, see 1981 N. Y. Laws, ch. 352, §2, and the Disability Benefits Law now requires employers to provide the same benefits for pregnancy as for any other disability.[4]

## B

The federal Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. §1001 *et seq.* (1976 ed. and Supp. V), subjects to federal regulation plans providing employees with fringe benefits. ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. See *Nachman Corp.* v. *Pension Benefit Guaranty Corp.*, 446 U. S. 359, 361–362 (1980); *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U. S. 504, 510 (1981). The term "employee benefit plan" is defined as including both pension plans and welfare

---

[4] The current version of the Disability Benefits Law provides in relevant part:

"§204. Disability during employment

"1. Disability benefits shall be payable to an eligible employee for disabilities . . . beginning with the eighth consecutive day of disability and thereafter during the continuance of disability, subject to the limitations as to maximum and minimum amounts and duration and other conditions and limitations in this section and in sections two hundred five and two hundred six. . . .

"2. The weekly benefit which the disabled employee is entitled to receive for disability commencing on or after July first, nineteen hundred seventy-four shall be one-half of the employee's average weekly wage, but in no case shall such benefit exceed ninety-five dollars nor be less than twenty dollars; except that if the employee's average weekly wage is less than twenty dollars, his benefit shall be such average weekly wage. . . .

"§205. Disabilities and disability periods for which benefits are not payable

"No employee shall be entitled to benefits under this article:

"1. For more than twenty-six weeks during a period of fifty-two consecutive calendar weeks or during any one period of disability."

plans.[5] The statute imposes participation, funding, and vesting requirements on pension plans. §§ 201–306, 29 U. S. C. §§ 1051–1086 (1976 ed. and Supp. V). It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans. §§ 101–111, 401–414, 29 U. S. C. §§ 1021–1031, 1101–1114 (1976 ed. and Supp. V). ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits.

Section 514(a) of ERISA, 29 U. S. C. § 1144(a), pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[6] State laws regulating insurance, banking, or securities are exempt from this pre-emption provision, as are generally applicable state criminal laws. §§ 514(b)(2)(A) and (b)(4), 29 U. S. C. §§ 1144(b)(2)(A) and (b)(4). Section 514(d), 29 U. S. C. § 1144(d), moreover, provides that "[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law." And § 4(b)(3)

---

[5] ERISA § 3(3), 29 U. S. C. § 1002(3). An "employee pension benefit plan" provides income deferral or retirement income. § 3(2), 29 U. S. C. § 1002(2). An "employee welfare benefit plan" includes any program that provides benefits for contingencies such as illness, accident, disability, death, or unemployment. § 3(1), 29 U. S. C. § 1002(1).

[6] Section 514(a) provides:

"Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b)."

The term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." § 514(c)(1), 29 U. S. C. § 1144(c)(1). The term "State" includes "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this title." § 514(c)(2), 29 U. S. C. § 1144(c)(2).

of ERISA, 29 U. S. C. § 1003(b)(3), exempts from ERISA coverage employee benefit plans that are "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws."

## II

Appellees in this litigation, Delta Air Lines, Inc., and other airlines (Airlines), Burroughs Corporation (Burroughs), and Metropolitan Life Insurance Company (Metropolitan), provided their employees with various medical and disability benefits through welfare plans subject to ERISA. These plans, prior to the effective date of the Pregnancy Discrimination Act, did not provide benefits to employees disabled by pregnancy as required by the New York Human Rights Law and the State's Disability Benefits Law. Appellees brought three separate federal declaratory judgment actions against appellant state agencies and officials,[7] alleging that the Human Rights Law was pre-empted by ERISA. The Airlines in their action alleged that the Disability Benefits Law was similarly pre-empted.[8]

The United States District Court in each case held that the Human Rights Law was pre-empted, at least insofar as it

---

[7] The Airlines brought their action in the United States District Court for the Southern District of New York and named as defendants the New York State Division of Human Rights, the Division's Commissioner, the Division's General Counsel, the New York State Workmen's Compensation Board, and the Board's Chairman. App. 28. Burroughs brought its action in the Western District of New York against only the Commissioner of the Division of Human Rights. *Id.*, at 81. Metropolitan, suing in the Southern District of New York, named the Commissioner, the Division, and the New York State Human Rights Appeal Board. *Id.*, at 88.

[8] The Airlines also contended that the Human Rights Law and Disability Benefits Law were pre-empted by the Railway Labor Act, 45 U. S. C. § 151 *et seq.;* the Equal Pay Act, 29 U. S. C. § 206(d); Exec. Order No. 11246, 3 CFR 339 (1964–1965 Comp.); and Title VII. These claims were resolved against the Airlines, see *Delta Air Lines, Inc.* v. *Kramarsky,* 666 F. 2d 21, 26, n. 2 (CA2 1981); *Delta Air Lines, Inc.* v. *Kramarsky,* 650 F. 2d 1287, 1296–1302 (CA2 1981), and are not before us.

required the provision of pregnancy benefits prior to the effective date of the Pregnancy Discrimination Act.[9]  With respect to the Airlines' challenge to the Disability Benefits Law, the District Court construed § 4(b)(3) of ERISA as exempting from the federal statute "those provisions of an employee plan which are maintained to comply with" state disability insurance laws.  *Delta Air Lines, Inc.* v. *Kramarsky,* 485 F. Supp. 300, 307 (SDNY 1980).  Because it concluded that the Airlines would have provided pregnancy benefits solely to comply with the Disability Benefits Law, the court dismissed the portion of their complaint seeking relief from that law.

The United States Court of Appeals for the Second Circuit affirmed as to the Human Rights Law.  *Delta Air Lines, Inc.* v. *Kramarsky,* 666 F. 2d 21 (1981); *Metropolitan Life*

---

[9] The opinion in the Airlines' case is reported as *Delta Air Lines, Inc.* v. *Kramarsky,* 485 F. Supp. 300 (SDNY 1980); the District Court opinions in the two other cases are not reported.   In the Airlines' case, the District Court enjoined appellants from enforcing the Human Rights Law against the Airlines' benefit plans with respect to the period from December 20, 1976 (the date of the New York Court of Appeals' decision in *Brooklyn Union Gas*) to April 29, 1979 (the effective date of the federal Pregnancy Discrimination Act).   See App. to Juris. Statement A75.   As of the latter date, the court held, the Airlines' claims for relief were moot because federal law required the Airlines to include pregnancy disabilities in their employee benefit plans.   485 F. Supp., at 302.

In Burroughs' case, the District Court enjoined prosecution of Burroughs for its refusal to compensate New York employees for pregnancy-related disability claims between January 1, 1975 (the effective date of ERISA) and April 1, 1979 (which the court mistakenly believed to be the effective date of the Pregnancy Discrimination Act).   App. to Juris. Statement A103–A104.   In Metropolitan's case, the District Court enjoined enforcement of the Human Rights Law with respect to employee benefit plans subject to ERISA.   The court's order was not limited to pregnancy benefits and did not refer specifically to any time period.   *Id.,* at A119–A120.

The cases, of course, are not moot with respect to the period before the effective date of the Pregnancy Discrimination Act, since enforcement of the Human Rights Law would subject appellees to liability.

*Insurance Co.* v. *Kramarsky*, 666 F. 2d 26 (1981); *Burroughs Corp.* v. *Kramarsky*, 666 F. 2d 27 (1981).[10]  Relying on this Court's decision in *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U. S. 504 (1981), and on its own ruling in *Pervel Industries, Inc.* v. *Connecticut Commission on Human Rights & Opportunities*, 603 F. 2d 214 (1979), order aff'g 468 F. Supp. 490 (Conn. 1978), cert. denied, 444 U. S. 1031 (1980), the court held that § 514(a) of ERISA operated to pre-empt the Human Rights Law, and that § 514(d) did not save that law from pre-emption.[11]  With respect to the Disability Benefits Law, the Court of Appeals had concluded earlier that § 4(b)(3)'s exemption from pre-emption applied only when a benefit plan, "as

---

[10] The three cases were not consolidated on appeal, but were argued the same day.  The court treated the Airlines' appeal as the "lead" case.

[11] Initially, the Court of Appeals had reversed the District Courts' holdings that ERISA pre-empted the Human Rights Law.  *Delta Air Lines, Inc.* v. *Kramarsky*, 650 F. 2d 1287 (1981); *Burroughs Corp.* v. *Kramarsky*, 650 F. 2d 1308 (1981); *Metropolitan Life Insurance Co.* v. *Kramarsky*, 650 F. 2d 1309 (1981).  Although *Pervel* ordinarily would have been controlling, the court concluded that it was bound by this Court's dismissals, for want of a substantial federal question, of the appeals in *Minnesota Mining & Manufacturing Co.* v. *State*, 289 N. W. 2d 396 (Minn. 1979), appeal dism'd, 444 U. S. 1041 (1980), and *Mountain States Telephone & Telegraph Co.* v. *Commissioner of Labor & Industry*, 187 Mont. 22, 608 P. 2d 1047 (1979), appeal dism'd, 445 U. S. 921 (1980).  In those cases the state courts had determined that state fair employment laws similar to the Human Rights Law were not pre-empted by ERISA.

The Court of Appeals observed that this Court had denied certiorari in *Pervel*, which reached the opposite result, only a week before dismissing the appeal in *Minnesota Mining*.  Understandably viewing this sequence of events as "rather mystifying," 650 F. 2d, at 1296, the court noted that dismissals of appeals are binding precedents for the lower courts, see *Hicks* v. *Miranda*, 422 U. S. 332, 343–345, and n. 14 (1975), while denials of certiorari have no precedential force.  After this Court's decision in *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U. S. 504 (1981), the Court of Appeals granted rehearing and returned to its *Pervel* reasoning, holding that *Alessi* was a "doctrinal development," see *Hicks* v. *Miranda*, 422 U. S., at 344–345, that warranted departure from the precedent set by the Court's summary dispositions.  666 F. 2d, at 25–26.

an integral unit," is maintained solely to comply with a disability law. *Delta Air Lines, Inc.* v. *Kramarsky,* 650 F. 2d 1287, 1304 (1981). The court remanded for inquiries into whether the Airlines provided disability benefits through plans constituting separate administrative units, in which event the Disability Benefits Law would be enforceable, or through portions of comprehensive benefit plans, in which case ERISA regulation would be exclusive.

Because courts have disagreed about the scope of ERISA's pre-emption provisions,[12] and because of the continuing importance of the issues presented,[13] we noted probable jurisdiction in all three cases. 456 U. S. 924 (1982).

### III

In deciding whether a federal law pre-empts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue. "Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' *Jones* v. *Rath Packing Co.,* 430 U. S. 519, 525 (1977)." *Fidelity Federal Savings & Loan Assn.* v. *De la Cuesta,* 458 U. S. 141, 152–153 (1982). See *Exxon Corp.* v. *Eagerton,* 462 U. S.

---

[12] See *Minnesota Mining & Manufacturing Co.* v. *State, supra; Mountain States Telephone & Telegraph Co.* v. *Commissioner of Labor & Industry, supra;* see also *Bucyrus-Erie Co.* v. *Department of Industry, Labor & Human Relations,* 599 F. 2d 205 (CA7 1979), cert. denied, 444 U. S. 1031 (1980).

[13] Under the Pregnancy Discrimination Act, the kind of discrimination at issue here is now unlawful regardless of state law. The controversy about the Human Rights Law has not thereby become less significant, however; the Human Rights Law and other state fair employment laws may contain proscriptions broader than Title VII in other respects, see, *e. g.,* N. Y. Exec. Law. § 296.1(a) (McKinney 1982) (prohibiting discrimination in employment based on marital status), and there is uncertainty about whether state fair employment laws may be enforced to the extent they prohibit the same practices as Title VII.

176, 180–182 (1983); *Pacific Gas & Electric Co.* v. *State Energy Resources Conservation and Development Comm'n,* 461 U. S. 190, 203–204 (1983). In these cases, we address the scope of several provisions of ERISA that speak expressly to the question of pre-emption. The issues are whether the Human Rights Law and Disability Benefits Law "relate to" employee benefit plans within the meaning of § 514(a), see n. 6, *supra,* and, if so, whether any exception in ERISA saves them from pre-emption.[14]

We have no difficulty in concluding that the Human Rights Law and Disability Benefits Law "relate to" employee benefit plans. The breadth of § 514(a)'s pre-emptive reach is apparent from that section's language.[15] A law "relates to" an

---

[14] The Court's decision today in *Franchise Tax Board* v. *Construction Laborers Vacation Trust, ante,* p. 1, does not call into question the lower courts' jurisdiction to decide these cases. *Franchise Tax Board* was an action seeking a declaration that state laws were *not* pre-empted by ERISA. Here, in contrast, companies subject to ERISA regulation seek injunctions against enforcement of state laws they claim *are* pre-empted by ERISA, as well as declarations that those laws are pre-empted.

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. See *Ex parte Young,* 209 U. S. 123, 160–162 (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U. S. C. § 1331 to resolve. See *Smith* v. *Kansas City Title & Trust Co.,* 255 U. S. 180, 199–200 (1921); *Louisville & Nashville R. Co.* v. *Mottley,* 211 U. S. 149, 152 (1908); see also *Franchise Tax Board, ante,* at 19–22, and n. 20; Note, Federal Jurisdiction over Declaratory Suits Challenging State Action, 79 Colum. L. Rev. 983, 996–1000 (1979). This Court, of course, frequently has resolved pre-emption disputes in a similar jurisdictional posture. See, *e. g., Ray* v. *Atlantic Richfield Co.,* 435 U. S. 151 (1978); *Jones* v. *Rath Packing Co.,* 430 U. S. 519 (1977); *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U. S. 132 (1963); *Hines* v. *Davidowitz,* 312 U. S. 52 (1941).

[15] The Court recently considered § 514(a) in *Alessi, supra.* In that case, a New Jersey statute prohibited a method of computing pension benefits which, the Court found, Congress intended to permit when it enacted

employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.[16] Employing this definition, the Human Rights Law, which prohibits employers from structuring their employee benefit plans in a manner that discriminates on the basis of pregnancy, and the Disability Benefits Law, which requires employers to pay employees specific benefits, clearly "relate to" benefit plans.[17] We must give effect to this plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning. *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980); see *North Dakota* v. *United States*, 460 U. S. 300,

ERISA. Finding that Congress "meant to establish pension plan regulation as exclusively a federal concern," 451 U. S., at 523, and that the New Jersey law "eliminates one method for calculating pension benefits—integration—that is permitted by federal law," *id.*, at 524, the Court held that the law was pre-empted. The Court relied not on § 514(a)'s language and legislative history, but on the state law's frustration of congressional intent. That kind of tension is not present in these cases; while federal law did not prohibit pregnancy discrimination during the relevant period, Congress, in enacting ERISA, demonstrated no desire to permit it. *Alessi*'s recognition of the exclusive federal role in regulating benefit plans, therefore, is instructive but not dispositive. See also *Franchise Tax Board* v. *Construction Laborers Vacation Trust, ante,* at 24, n. 26 (describing § 514(a) as a "virtually unique pre-emption provision"); *Allied Structural Steel Co.* v. *Spannaus,* 438 U. S. 234, 248, n. 21 (1978) (dictum).

[16] See Black's Law Dictionary 1158 (5th ed. 1979) ("Relate. To stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with"). See also *Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.*, 289 U. S. 689, 695 (1933).

[17] Accord, *Bucyrus-Erie Co.* v. *Department of Industry, Labor & Human Relations,* 599 F. 2d, at 208–210; *Pervel Industries, Inc.* v. *Connecticut Commission on Human Rights & Opportunities,* 468 F. Supp. 490, 492 (Conn. 1978), affirmance order, 603 F. 2d 214 (CA2 1979), cert. denied, 444 U. S. 1031 (1980).

Of course, § 514(a) pre-empts state laws only insofar as they relate to plans covered by ERISA. The Human Rights Law, for example, would be unaffected insofar as it prohibits employment discrimination in hiring, promotion, salary, and the like.

312 (1983); *Dickerson* v. *New Banner Institute, Inc.,* 460 U. S. 103, 110 (1983).

In fact, however, Congress used the words "relate to" in § 514(a) in their broad sense. To interpret § 514(a) to pre-empt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514. It would have been unnecessary to exempt generally applicable state criminal statutes from pre-emption in § 514(b), for example, if § 514(a) applied only to state laws dealing specifically with ERISA plans.

Nor, given the legislative history, can § 514(a) be interpreted to pre-empt only state laws dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like. The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA.[18] The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language. See H. R. Conf. Rep. No. 93–1280, p. 383 (1974); S. Conf. Rep. No. 93–1090, p. 383 (1974).[19] Statements by the bill's

---

[18] The bill that passed the House, H. R. 2, 93d Cong., 2d Sess., § 514(a) (1974), 3 Legislative History of the Employee Retirement Income Security Act of 1974 (Committee Print compiled by the Senate Committee on Labor and Public Welfare), pp. 4057–4058 (1976) (Legislative History), provided that ERISA would supersede state laws "relat[ing] to the reporting and disclosure responsibilities, and fiduciary responsibilities, of persons acting on behalf of any employee benefit plan to which part 1 applies." The bill that passed the Senate, H. R. 2, 93d Cong, 2d Sess., § 699(a) (1974), 3 Legislative History 3820, provided for pre-emption of state laws "relat[ing] to the subject matters regulated by this Act or the Welfare and Pension Plans Disclosure Act."

[19] In deciding to pre-empt state laws relating to benefit plans, rather than those laws relating to subjects covered by ERISA, the Conference Committee rejected a much narrower administration proposal. The administration's recommendations to the conferees described the pre-emption provision of the House and Senate bills as "extremely vague" and "too broad," respectively, and suggested language making explicit the areas of

sponsors during the subsequent debates stressed the breadth of federal pre-emption. Representative Dent, for example, stated:

"Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation." 120 Cong. Rec. 29197 (1974).

Senator Williams echoed these sentiments:

"It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law." *Id.*, at 29933.[20]

---

state law to be pre-empted. Administration Recommendations to the House and Senate Conferees on H. R. 2 to Provide for Pension Reform 107–108, 3 Legislative History 5145–5146. The version of § 514(a) that emerged from Conference bore no resemblance to the administration proposal. See Hutchinson & Ifshin, Federal Preemption of State Law Under the Employee Retirement Income Security Act of 1974, 46 U. Chi. L. Rev. 23, 39–40, and n. 121 (1978).

[20] See also 120 Cong. Rec. 29942 (1974) (remarks of Sen. Javits):

"Both [original] House and Senate bills provided for preemption of State law, but—with one major exception appearing in the House bill—defined the perimeters of preemption in relation to the areas regulated by the bill. Such a formulation raised the possibility of endless litigation over the validity of State action that might impinge on Federal regulation, as well as opening the door to multiple and potentially conflicting State laws hastily

Given the plain language of § 514(a), the structure of the Act, and its legislative history, we hold that the Human Rights Law and the Disability Benefits Law "relate to any employee benefit plan" within the meaning of ERISA's § 514(a).[21]

## IV

We next consider whether any of the narrow exceptions to § 514(a) saves these laws from pre-emption.

## A

Appellants argue that the Human Rights Law is exempt from pre-emption by § 514(d), which provides that § 514(a)

contrived to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the Federal regulatory scheme.

"Although the desirability of further regulation—at either the State or Federal level—undoubtedly warrants further attention, on balance, the emergence of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans required—but for certain exceptions—the displacement of State action in the field of private employee benefit programs."

Senator Javits noted that the conferees had assigned the Congressional Pension Task Force the responsibility of studying and evaluating ERISA pre-emption in order to determine whether modifications in the pre-emption policy would be necessary. *Ibid.* See ERISA §§ 3021, 3022(a)(4), 88 Stat. 999 (formerly codified as 29 U. S. C. §§ 1221, 1222(a)(5)). After a period of monitoring by the Task Force, and hearings by the Subcommittee on Labor Standards of the House Committee on Education and Labor, a Report was issued evaluating ERISA's pre-emption provisions. The Report expressed approval of ERISA's broad pre-emption of state law, explaining that "the Federal interest and the need for national uniformity are so great that enforcement of state regulation should be precluded." H. R. Rep. No. 94–1785, p. 47 (1977). The Report recommended only that the exceptions described in § 514(b) be narrowed still further. *Ibid.*

[21] Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan. Cf. *American Telephone and Telegraph Co.* v. *Merry,* 592 F. 2d 118, 121 (CA2 1979) (state garnishment of a spouse's pension income to enforce alimony and support orders is not pre-empted). The present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line.

shall not "be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." According to appellants, pre-emption of state fair employment laws would impair and modify Title VII because it would change the means by which it is enforced.

State laws obviously play a significant role in the enforcement of Title VII. See, *e. g.*, *Kremer* v. *Chemical Construction Corp.*, 456 U. S. 461, 468–469, 472, 477 (1982); *id.*, at 504 (dissenting opinion); *New York Gaslight Club, Inc.* v. *Carey*, 447 U. S. 54, 63–65 (1980). Title VII expressly preserves nonconflicting state laws in its § 708:

> "Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title." 78 Stat. 262, 42 U. S. C. § 2000e–7.[22]

Moreover, Title VII requires recourse to available state administrative remedies. When an employment practice prohibited by Title VII is alleged to have occurred in a State or locality which prohibits the practice and has established an

---

[22] See also § 1104, 78 Stat. 268, 42 U. S. C. § 2000h–4. The Court of Appeals properly rejected the simplistic "double saving clause" argument—that because ERISA does not pre-empt Title VII, and Title VII does not pre-empt state fair employment laws, ERISA does not pre-empt such laws. 666 F. 2d, at 25–26. Title VII does not transform state fair employment laws into federal laws that § 514(d) saves from ERISA pre-emption. Furthermore, since Title VII's saving clause applies to all state laws with which it is not in conflict, rather than just to nondiscrimination laws, and since many federal laws contain nonpre-emption provisions, the double saving clause argument, taken to its logical extreme, would save almost all state laws from pre-emption. The question whether pre-emption of state fair employment laws would "impair" Title VII, in light of Title VII's reliance on state laws and agencies, is the more difficult question we address in the text.

agency to enforce that prohibition, the Equal Employment Opportunity Commission (EEOC) refers the charges to the state agency. The EEOC may not actively process the charges "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated." § 706(c), 86 Stat. 104, 42 U. S. C. § 2000e–5(c); see *Love* v. *Pullman Co.*, 404 U. S. 522 (1972). In its subsequent proceedings, the EEOC accords "substantial weight" to the state administrative determination. § 706(b), 86 Stat. 104, 42 U. S. C. § 2000e–5(b).

Given the importance of state fair employment laws to the federal enforcement scheme, pre-emption of the Human Rights Law would impair Title VII to the extent that the Human Rights Law provides a means of enforcing Title VII's commands. Before the enactment of ERISA, an employee claiming discrimination in connection with a benefit plan would have had his complaint referred to the New York State Division of Human Rights. If ERISA were interpreted to pre-empt the Human Rights Law entirely with respect to covered benefit plans, the State no longer could prohibit the challenged employment practice and the state agency no longer would be authorized to grant relief. The EEOC thus would be unable to refer the claim to the state agency. This would frustrate the goal of encouraging joint state/federal enforcement of Title VII; an employee's only remedies for discrimination prohibited by Title VII in ERISA plans would be federal ones. Such a disruption of the enforcement scheme contemplated by Title VII would, in the words of § 514(d), "modify" and "impair" federal law.[23]

---

[23] Pre-emption of this sort not only would eliminate a forum for resolving disputes that, in certain situations, may be more convenient than the EEOC, but also would substantially increase the EEOC's workload. Because the EEOC would be unable to refer claims to state agencies for initial processing, those claims that would have been settled at the state level

Insofar as state laws prohibit employment practices that are lawful under Title VII, however, pre-emption would not impair Title VII within the meaning of § 514(d). Although Title VII does not itself prevent States from extending their nondiscrimination laws to areas not covered by Title VII, see § 708, 78 Stat. 262, 42 U. S. C. § 2000e–7, it in no way depends on such extensions for its enforcement. Title VII would prohibit precisely the same employment practices, and be enforced in precisely the same manner, even if no State made additional employment practices unlawful. Quite simply, Title VII is neutral on the subject of all employment practices it does not prohibit.[24] We fail to see how federal

would require the EEOC's attention. Claims that would not have been settled at the state level, but would have produced an administrative record, would come to the EEOC without such a record. The EEOC's options for coping with this added burden, barring discoveries of reserves in the agency budget, would be to devote less time to each individual case or to accept longer delays in handling cases. The inevitable result of complete pre-emption, in short, would be less effective enforcement of Title VII.

[24] Appellants argue that pre-emption of the Human Rights Law's prohibition of pregnancy discrimination would impair Title VII because that law encourages States to enact fair employment laws providing greater substantive protection than Title VII. See, e. g., Tr. of Oral Arg. 6–7, 11. We have found no statutory language or legislative history suggesting that the federal interest in state fair employment laws extends any farther than saving such laws from pre-emption by Title VII itself. As the court stated in *Pervel*, 468 F. Supp., at 493, "Title VII did not create new authority for state anti-discrimination laws; it simply left them where they were before the enactment of Title VII."

The legislative history of the Pregnancy Discrimination Act does not assist appellants. Although the House Report observed that many employers already were subject to state laws prohibiting pregnancy discrimination, H. R. Rep. No. 95–948, pp. 9–11 (1978); see S. Rep. No. 95–331, pp. 10–11 (1977), this observation subsequent to ERISA's enactment conveys no information about the intent of the Congress that passed ERISA. The conferees did not even mention ERISA; evidently, they simply failed to consider whether ERISA plans were subject to state laws prohibiting pregnancy discrimination.

law would be impaired by pre-emption of a state law prohibiting conduct that federal law permitted.

ERISA's structure and legislative history, while not particularly illuminating with respect to § 514(d), caution against applying it too expansively. As we have detailed above, Congress applied the principle of pre-emption "in its broadest sense to foreclose any non-Federal regulation of employee benefit plans," creating only very limited exceptions to pre-emption. 120 Cong. Rec. 29197 (1974) (remarks of Rep. Dent); see id., at 29933 (remarks of Sen. Williams). Sections 4(b)(3) and 514(b), which list specific exceptions, do not refer to state fair employment laws. While § 514(d) may operate to exempt provisions of state laws upon which federal laws depend for their enforcement, the combination of Congress' enactment of an all-inclusive pre-emption provision and its enumeration of narrow, specific exceptions to that provision makes us reluctant to expand § 514(d) into a more general saving clause.

The references to employment discrimination in the legislative history of ERISA provide no basis for an expansive construction of § 514(d). During floor debates, Senator Mondale questioned whether the Senate bill should be amended to require nondiscrimination in ERISA plans. Senator Williams replied that no such amendment was necessary or desirable. He noted that Title VII already prohibited discrimination in benefit plans, and stated: "I believe that the thrust toward centralized administration of nondiscrimination in employment must be maintained. And I believe this can be done by the Equal Employment Opportunity Commission under terms of existing law." 119 Cong. Rec. 30409 (1973). Senator Mondale, "with the understanding that nondiscrimination in pension and profit-sharing plans is fully required under the Equal Employment Opportunity Act," id., at 30410, chose not to offer a nondiscrimination amendment. This colloquy was repeated on the floor of the House by Representatives Abzug and Dent. 120 Cong. Rec. 4726 (1974).

These exchanges demonstrate only the obvious: that § 514(d) does not pre-empt federal law. The speakers referred to federal law, the EEOC, and the need for centralized enforcement. The limited legislative history dealing with § 514(d) is entirely consistent with Congress' goal of ensuring that employers would not face "conflicting or inconsistent State and local regulation of employee benefit plans," 120 Cong. Rec. 29933 (1974) (remarks of Sen. Williams). Congress might well have believed, had it considered the precise issue before us, that ERISA plans should be subject only to the nondiscrimination provisions of Title VII, and not also to state laws prohibiting other forms of discrimination. By establishing benefit plan regulation "as exclusively a federal concern," *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U. S., at 523, Congress minimized the need for interstate employers to administer their plans differently in each State in which they have employees.[25]

We recognize that our interpretation of § 514(d) as requiring partial pre-emption of state fair employment laws may cause certain practical problems. Courts and state agencies, rather than considering whether employment practices are

---

[25] An employer with employees in many States might find that the most efficient way to provide benefits to those employees is through a single employee benefit plan. Obligating the employer to satisfy the varied and perhaps conflicting requirements of particular state fair employment laws, as well as the requirements of Title VII, would make administration of a uniform nationwide plan more difficult. The employer might choose to offer a number of plans, each tailored to the laws of particular States; the inefficiency of such a system presumably would be paid for by lowering benefit levels. Alternatively, assuming that the state laws were not in conflict, the employer could comply with the laws of all States in a uniform plan. To offset the additional expenses, the employer presumably would reduce wages or eliminate those benefits not required by any State. Another means by which the employer could retain its uniform nationwide plan would be by eliminating classes of benefits that are subject to state requirements with which the employer is unwilling to comply. ERISA's comprehensive pre-emption of state law was meant to minimize this sort of interference with the administration of employee benefit plans.

unlawful under a broad state law, will have to determine whether they are prohibited by Title VII. If they are not, the state law will be superseded and the agency will lack authority to act. It seems more than likely, however, that state agencies and courts are sufficiently familiar with Title VII to apply it in their adjudicative processes. Many States look to Title VII law as a matter of course in defining the scope of their own laws.[26] In any event, these minor practical difficulties do not represent the kind of "impairment" or "modification" of *federal* law that can save a *state* law from pre-emption under § 514(d). To the extent that our construction of ERISA causes any problems in the administration of state fair employment laws, those problems are the result of congressional choice and should be addressed by congressional action. To give § 514(d) the broad construction advocated by appellants would defeat the intent of Congress to provide comprehensive pre-emption of state law.

## B

The Disability Benefits Law presents a different problem. Section 514(a) of ERISA pre-empts state laws that relate to benefit plans "described in section 4(a) and not exempt under section 4(b)." Consequently, while the Disability Benefits Law plainly is a state law relating to employee benefit plans, it is not pre-empted if the plans to which it relates are exempt from ERISA under § 4(b). Section 4(b)(3) exempts "any employee benefit plan . . . maintained solely for the purpose of complying with applicable . . . disability insurance laws." The Disability Benefits Law is a "disability insurance law," of course; the difficulty is that at least some of the bene-

---

[26] See, *e. g.*, *Arizona Civil Rights Division* v. *Olson*, 132 Ariz. 20, 24, n. 2, 643 P. 2d 723, 727, n. 2 (1982); *Scarborough* v. *Arnold*, 117 N. H. 803, 807, 379 A. 2d 790, 793 (1977); *Snell* v. *Montana-Dakota Utilities Co.*, 198 Mont. 56, 62, 643 P. 2d 841, 844 (1982); *Orr* v. *Clyburn*, 277 S. C. 536, 539, 290 S. E. 2d 804, 806 (1982); *Albertson's, Inc.* v. *Washington State Human Rights Comm'n*, 14 Wash. App. 697, 699–700, 544 P. 2d 98, 100 (1976).

fit plans offered by the Airlines provide benefits not required by that law. The question is whether, with respect to those among the Airlines using multibenefit plans, the Disability Benefits Law's requirement that employers provide particular benefits remains enforceable.

As the Court of Appeals recognized, § 4(b)(3) excludes "plans," not portions of plans, from ERISA coverage; those portions of the Airlines' multibenefit plans maintained to comply with the Disability Benefits Law, therefore, are not exempt from ERISA and are not subject to state regulation. There is no reason to believe that Congress used the word "plan" in § 4(b) to refer to individual benefits offered by an employee benefit plan. To the contrary, § 4(b)(3)'s use of the word "solely" demonstrates that the purpose of the entire plan must be to comply with an applicable disability insurance law. As the Court noted in *Alessi*, plans that not only provide benefits required by such a law, but also "more broadly serve employee needs as a result of collective bargaining," are not exempt. 451 U. S., at 523, n. 20. The test is not one of the employer's motive—any employer could claim that it provided disability benefits altruistically, to attract good employees, or to increase employee productivity, as well as to obey state law—but whether the plan, as an administrative unit, provides only those benefits required by the applicable state law.

Any other rule, it seems to us, would make little sense. Under the District Court's approach, for which appellants argue here, one portion of a multibenefit plan would be subject only to state regulation, while other portions would be exclusively within the federal domain. An employer with employees in several States would find its plan subject to a different jurisdictional pattern of regulation in each State, depending on what benefits the State mandated under disability, workmen's compensation, and unemployment compensation laws. The administrative impracticality of permitting mutually exclusive pockets of federal and state

jurisdiction within a plan is apparent. We see no reason to torture the plain language of § 4(b)(3) to achieve this result. Only separately administered disability plans maintained solely to comply with the Disability Benefits Law are exempt from ERISA coverage under § 4(b)(3).

This is not to say, however, that the Airlines are completely free to circumvent the Disability Benefits Law by adopting plans that combine disability benefits inferior to those required by that law with other types of benefits. Congress surely did not intend, at the same time it preserved the role of state disability laws, to make enforcement of those laws impossible. A State may require an employer to maintain a disability plan complying with state law as a separate administrative unit. Such a plan would be exempt under § 4(b)(3). The fact that state law permits employers to meet their state-law obligations by including disability insurance benefits in a multibenefit ERISA plan, see N. Y. Work. Comp. Law App. § 355.6 (McKinney Supp. 1982–1983), does not make the state law wholly unenforceable as to employers who choose that option.

In other words, while the State may not require an employer to alter its ERISA plan, it may force the employer to choose between providing disability benefits in a separately administered plan and including the state-mandated benefits in its ERISA plan. If the State is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply. The Court of Appeals erred, therefore, in holding that appellants are not at all free to enforce the Disability Benefits Law against those appellees that provide disability benefits as part of multibenefit plans.

V

We hold that New York's Human Rights Law is preempted with respect to ERISA benefit plans only insofar as it prohibits practices that are lawful under federal law. To

this extent, the judgments of the Court of Appeals are affirmed. To the extent the Court of Appeals held any more of the Human Rights Law pre-empted, we vacate its judgments and remand the cases.

We further hold that the Disability Benefits Law is not pre-empted by ERISA, although New York may not enforce its provisions through regulation of ERISA-covered benefit plans. We therefore vacate the Court of Appeals' judgment in the Airlines' case on this ground and remand that case for further proceedings consistent with this opinion.

No costs are allowed.

*It is so ordered.*