AMBRO, Circuit Judge,
concurring.
Judge Rendell’s opinion is well-crafted, and I join it. In many cases, however, the result underwhelms. Thus, like Judge Becker, I implore for a better way to make these kinds of decisions.
Congress in 1974 passed “a comprehensive statute designed to promote the inter *468 ests of employees and their beneficiaries in employee benefit plans.” Shaw v. Delta Air Lines, Inc. 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). That statute - the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. § 1001 et seq. - made policy compromises in order to combat exponentially rising health care costs in a melange of state tort laws assessing negligence after-the-fact. See generally Jonathan J. Frankel, Medical Malpractice Law and Health Care Cost Containment: Lessons for Reformers from the Clash of Cultures, 103 Yale L.J. 1297 (1994). Among the newer forms of managing the providing of healthcare services was to “ ‘prospectively and concurrently assess the appropriateness of care....’” Id. at 1302 (quoting Elizabeth W. Hoy et al., Change and Growth in Managed Care, Health Aff., Winter 1991, at 27).
Instead of healthcare insurers reimbursing insureds for already-given medical care, health maintenance organizations (“HMOs”) were created where, upon “receipt of a fixed fee for each patient enrolled under the terms of a contract [,]... specified health care [is provided] if needed.” Pegram v. Herdrich, 530 U.S. 211, 218, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). Physicians contract with HMOs to provide services to patients in the HMO for set fees. HMOs, via a health plan purchased by patients’ employers, set “[r]ules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services.... ” Id. at 223, 120 S.Ct. 2143. The bottom line - non-routine medical services are provided after they are approved.
This system, simple in concept, has Sisyphean frustration in application. At the forefront is preemption. To save costs in a tort system where medical decisions by service providers are second-guessed by non-medical persons, ERISA preempts state law that conflicts with ERISA, 29 U.S.C. § 1144(a), and is a “cause of action within the scope of the civil enforcement provisions of [ERISA] § 502(a) [29 U.S.C. § 1132(a) ].” Cicio v. Does, 321 F.3d 83, 94 (2d Cir.2003) (quoting from Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Included within this subsection is any civil action brought “by a [plan] participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.... ” 29 U.S.C. § 1132(a)(1)(B). Stated colloquially, ERISA “federalizes” most employee benefit plan remedies.
Judges Rendell and Becker in this case, and Judge Calabresi in his partial dissent in Cicio, 32 F.3d at 106 et seq., point out poignantly the so-often unsatisfying constructs we use to cipher meaning when cultures of cost containment and tort responsibility clash over preemption. “The litigants in these cases spar over the extent to which a lay financing entity [the HMO] has appropriated to itself distinctly medical authority by substituting its own expertise for that of the treating physician.” Frankel, 103 Yale L.J. at 1303 (emphasis in text). I join the chorus calling for a fresh look from higher authority to promote better the primary Congressional purpose of ERISA - protecting plan participants and their beneficiaries. “At issue is nothing less than the definition of medical decision-making itself,” id., and the lives that this affects.