RENDERED: JUNE 25, 2009
TO BE PUBLISHED

Supreme Court of Kentucky

2007-SC-000714-DG

DIRECTV, INC.
AND
ECHOSTAR SATELLITE, LLC

APPELLANTS

ON REVIEW FROM COURT OF APPEALS

V.       CASE NO. 2006-CA-001983-MR
FRANKLIN CIRCUIT COURT NO. 05-CI-01623

MARK TREESH, IN HIS OFFICIAL                    APPELLEES
CAPACITY AS COMMISSIONER OF
THE DEPARTMENT OF REVENUE
AND
FRANKFORT INDEPENDENT
SCHOOL DISTRICT

**OPINION OF THE COURT BY JUSTICE ABRAMSON**

**REVERSING**

Kentucky Revised Statute (KRS) 160.613 authorizes local district boards

of education to levy "a utility gross receipts license tax for schools" on the gross

receipts derived from furnishing utility services within the district. In 2005,

the General Assembly enacted House Bill 272, which in part expanded the

gross receipts tax base to include "gross receipts derived from the furnishing of

direct satellite broadcast and wireless cable service." KRS 160.614(3). Soon

after this new provision went into effect, Appellants DirecTV, Inc. and Echostar

Satellite, L.L.C., the multi-channel television industry's two largest suppliers of direct broadcast satellite (DBS) services (the DBS providers), brought suit in Franklin Circuit Court seeking a declaration that as applied to them the gross receipts tax was preempted by the federal Telecommunications Act of 1996, a provision of which bars local taxation of DBS programming services. They also sought an injunction barring the Department of Revenue (the Department) from enforcing the tax against them. By order entered August 22, 2006, the Circuit Court granted summary judgment in favor of the DBS providers and awarded the relief they sought. A divided panel of the Court of Appeals reversed. The majority ruled that because the gross receipts tax was levied to fund schools it was in effect a state tax and thus was not preempted by federal law. We accepted the DBS providers' motion for discretionary review to consider the preemptive scope of the applicable provision of the Telecommunications Act of 1996 and now reverse.

## RELEVANT FACTS

The General Assembly has expanded the tax base for the utility gross receipts license tax on two occasions. In 1990, the General Assembly amended the tax to include a levy "on the gross receipts derived from the furnishing of cable service in addition to the gross receipts derived from the furnishing of the utility services defined in KRS 160.6131." KRS 160.614(1).[1] Then, as noted, in 2005 the General Assembly authorized a levy on the "gross receipts derived

---

[1] "Cable service" is defined in KRS 136.602(1) as "the provision of video, audio, or other programming service to purchasers."

2

from the furnishing of direct satellite broadcast and wireless cable service in addition to the gross receipts derived from the furnishing of utility services defined in KRS 160.6131 and cable service." KRS 160.614(3).[2] The individual school districts decide at what rate to tax the cable and satellite providers, provided that rate does not exceed 3% of gross receipts, and may opt not to tax them at all. KRS 160.613, 60.614(4). The local school districts must, however, treat the two types of provider the same way. KRS 160.614(4)-(5). Cable and satellite providers are thus obliged to determine their tax liability on a district-by-district basis, and are required to remit the total to the Department every month. KRS 160.615.

While the Kentucky General Assembly was responding to the evolution of multi-channel video programming with these changes to the school tax provisions, Congress was addressing the same programming evolution in other ways. With the Telecommunications Act of 1996 (the 1996 Tele-communications Act), Congress extensively amended the original 1934 Telecommunications Act, stating that its intent was "[t]o promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Pub. L. 104-104 (preamble). Clearly aware of satellite broadcasters' emerging role as competitors of cable providers in the multi-channel video programming market,

---

[2] "Satellite broadcast" is defined as a point-to-point distribution service, wherein "programming or voice [is] transmitted or broadcast by satellite, microwave, or any other equipment directly to the purchaser." KRS 136.602(19).

Congress enacted Section 602(a) of the 1996 Act which provides: "Preemption. A provider of direct-to-home satellite service shall be exempt from the collection or remittance, or both, of any tax or fee imposed by any local taxing jurisdiction on direct-to-home satellite service." Pub. L. No. 104-104, Title VI, § 602(a) (reprinted at 47 U.S.C. § 152, historical and statutory notes). The DBS providers maintain that the gross receipts license tax is a local tax imposed in violation of Section 602(a), a tax to which they should not be subjected.

In ruling to the contrary, the Court of Appeals' majority relied on Section 602(c) of the 1996 Telecommunications Act, a savings clause which provides that "[t]his section shall not be construed to prevent taxation of a provider of direct-to-home satellite service by a State or to prevent a local taxing jurisdiction from receiving revenue derived from a tax or fee imposed and collected by a State." According to the Court of Appeals' majority, the gross receipts license tax is in effect a state tax and thus is saved from preemption by this latter provision. Although school taxes in Kentucky are indeed deemed state taxes for a variety of state purposes, we agree with the DBS providers that for the purposes of the 1996 Telecommunications Act, the gross receipts tax, as presently administered, must be deemed the sort of local imposition which Section 602(a) was intended to preempt.

## ANALYSIS

As the parties and the courts below all correctly note, under the Supremacy Clause of the United States Constitution (Article VI Clause 2), a state law that interferes with or is contrary to federal law is "without effect."

Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (citation and internal quotation marks omitted). This federal preemption of state law is generally understood as occurring in any one of three overlapping ways. Congress may expressly declare its intention to displace state law or it may imply that intention by so thoroughly occupying a legislative field as to leave no room for the States to develop their own rules. *Id.* The intent to preempt is also understood when the state law actually conflicts with federal law. *Id.* Where, as in this case, Congress has expressly declared its intention to preempt an area of state law, a reviewing court's task is reduced to determining the scope of that intended preemption. As the United States Supreme Court has explained,

> the purpose of Congress is the ultimate touchstone in every pre-emption case. . . . As a result, any understanding of the scope of a pre-emption statute must rest primarily on a fair understanding of *congressional purpose.* . . . Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it. . . . Also relevant, however, is the structure and purpose of the statute as a whole, . . . as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.

Medtronic, Inc. v. Lohr, 518 U.S. 470, 485-86 (1996) (internal quotation marks omitted). Thus, "congressional purpose" is paramount and a reviewing court must consider not only the language of the statute but also the statute's legislative history, an important indicator of Congress's intent. Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983).

5

Beginning with the language of Section 602(a), Congress preempted "any tax or fee imposed by any local taxing jurisdiction." A "local taxing jurisdiction" is defined to include "any municipality, city, county, township, parish, transportation district, or assessment jurisdiction, or any other local jurisdiction in the territorial jurisdiction of the United States with the authority to impose a tax or fee, but does not include a State." Section 602(b)(3). It is undisputed that the gross receipts license taxes at issue are imposed by approximately 140 of Kentucky's 170 local school districts; that each district may set the applicable tax rate, with the rates varying from district to district; and that a given district may exempt cable and satellite programming providers from the tax altogether if it so decides.

Despite the apparent local characteristics of the taxes, the Department and the Court of Appeals maintain that Kentucky's historical stance regarding the "state" nature of school taxes, City of Louisville v. Board of Education of City of Louisville, 154 Ky. 316, 157 S.W. 379, 380 (1913), saves them from preemption. While we do not disagree with the characterization of Kentucky precedent on school taxes, we are compelled to reject the contention that it saves the gross receipt taxes from preemption because the application of federal law is not "dependent on state law." N.L.R.B. v. Natural Gas Utility Dist., 402 U.S. 600 (1971). *See, e.g.* Montgomery v. Huntington Bank, 346 F.3d 693, 699 (6th Cir. 2003) ("State law . . . cannot be our reference point. Rather, to give proper meaning to a federal statute we must be guided by the plain meaning of the statute, canons of statutory construction, relevant

legislative history, and other *indicia* that shed light on the statute's meaning.") Thus Kentucky's particular view of school taxes is not a, much less the, determining factor in our preemption analysis. Moreover, the particular savings clause for state taxes in the 1996 Telecommunications Act, entitled "Preservation of State Authority," saves only those taxes or fees "imposed and collected by a State." Section 602(c). While the Department, an agent of the Commonwealth, collects the taxes for the various districts, it is undisputed that the taxes are actually imposed on a district-by-district, and not a statewide, basis. In short, when the challenged gross receipts taxes are evaluated in light of the language employed by Congress, they appear to be expressly preempted.

Our conclusion is buttressed by reference to the legislative history of Section 602 of the 1996 Telecommunications Act. Specifically, we may discern Congress's purpose in allowing State taxation of DBS services while preempting local taxation by considering the Conference Committee Report and the explanatory comments of one of the bill's sponsors. The Senate version of the 1996 Telecommunications Act did not contain Section 602's preemption provisions. The House version did. In adopting the House version, the Conference Committee explained that

> [t]he conference agreement adopts the House provisions with modifications. This section exempts DTH [direct-to-home] satellite service providers from collecting and remitting local taxes and fees on DTH satellite services. DTH satellite service is programming delivered directly to subscribers equipped with satellite receivers at their premises; it does not require the use of public rights-of-way or the physical facilities or

7

services of a community. The conferees adopt the House language, but narrow the language to ensure that the exemption is only provided for the actual sale of the programming delivered by the direct-to-home satellite service. . . . The intent of these amendments is to clarify that the exemption applies only to the programming provided by the direct-to-home satellite service. To give two illustrative examples, the exemption does not apply to the sale of equipment; . . . In addition, the exemption does not apply to real estate taxes that are otherwise applicable when the provider owns or leases real estate in a jurisdiction. Also, States are free to tax the sale of the service and they may rebate some or all of those monies to localities if they so desire.

H.R. Conf. Rep. 104-458, 201-02 (1996).

Recommending the Conference version on the floor of the House, Congressman Hyde, one of the bill's sponsors, further explained that

Section 602 reflects a legislative determination that the provision of direct-to-home satellite service is national, not local in nature. Unlike cable and telephone companies which utilize public rights-of-way to provide service to their subscribers, providers of direct-to-home services utilize satellites to provide programming to their subscribers in every jurisdiction. To permit thousands of local taxing jurisdictions to tax such a national service would create an unnecessary and undue burden on the providers of such services. Local taxing jurisdictions are therefor preempted from taxing the provision or sale of direct-to-home satellite services. Direct-to-home satellite service providers and others in the distribution chain are exempted from collecting and remitting local taxes and fees on the sale of such services. The power of the States to tax this service is not affected by section 602. Again, States may, if they wish, share the revenue thus collected with their local municipalities.

142 Cong. Rec. H1145-06, H1158 (1996).

Given these comments and the 1996 Telecommunication Act's general aim of encouraging efficient, competitive telecommunications markets, it is apparent that Congress's intent with Section 602 was not to spare the DBS providers from taxation as such, but to spare national businesses with little impact on local resources from the administrative costs and burdens of local taxation in the myriad local jurisdictions where their services would be sold.[3] Compliance with an enormous hodgepodge of local taxes would impose administrative costs, which, in Congress's view, were undue, since satellite providers, unlike cable and telephone companies, do not depend on local rights-of-way or a community's "physical facilities or services." Whether we (or our General Assembly for that matter) would concur with this distinction is irrelevant because Congress's stated purpose is both apparent and controlling.

Viewed in light of Section 602's legislative history, Kentucky's gross receipts license tax entails precisely the locality-by-locality administrative burdens Congress intended to preempt. DBS providers are required to calculate their taxes separately for each school district in the state, with potentially 170 districts imposing varying tax rates. It matters not, as the Department and Amicus, Time Warner Cable, Inc., argue, that the Department provides access to computer software meant to minimize that burden, for Congress has determined that the burden may not be imposed at all.

---

[3] Notably, there is no prohibition on the local school districts benefiting from taxes levied by the Commonwealth and then distributed to the districts. Section 602(c), quoted *supra,* expressly allows for local taxing districts "receiving revenue derived from a tax or fee imposed and collected by a State."

## **CONCLUSION**

In sum, Section 602(a) of the Telecommunications Act of 1996 preempts local taxation of direct-to-home broadcast satellite programming. The gross receipt taxes which various local school district boards of education impose on satellite programming providers pursuant to KRS 160.140 are local taxes which carry precisely the sort of administrative burdens the federal law was intended to avoid. Falling squarely within the scope of Section 602(a), the taxes are preempted by federal law. Accordingly, we reverse the Opinion of the Court of Appeals and thereby reinstate the Judgment of the Franklin Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Kenneth Sidney Handmaker
Bradley E. Cunningham
Middleton Reutlinger
2500 Brown & Williamson Tower
Louisville, KY 40202

E. Joshua Rosenkranz
Jeremy N. Kudon
Orrick, Herrington & Sutcliffe, LLP
666 Fifth Ave.
New York, NY 10103

Pantelis Michalopoulos
Steptoe & Johnson LLP
1330 Connecticut Ave., NW
Washington, DC 20036

Eric Shapland
Randy J. Kozel
Heller Ehrman LLP
Times Square Tower
7 Times Square
New York, NY 10036-6524

COUNSEL FOR APPELLEES:

Bethany G. Atkins
Office of Legal Services for Revenue
P.O. Box 423
Frankfort, KY 40602-0423

COUNSEL FOR AMICUS CURIAE
TIME WARNER CABLE, INC.:

Jackson W. White
Stoll Kennon Ogden PLLC
300 West Vine St., Suite 2100
Lexington, KY 40507-1801

Eric S. Tresh
Sutherland Asbill & Brennan, LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309-3996