**Eugene H. PHILLIPS, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, d/b/a GE Plastics, Defendant.**

Civ. A. Nos. 92–D–999–N, 94–D–611–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 18, 1995.

As Amended Jan. 20, 1995.

Sara Ashley Taliaferro, Mark Wayne Sabel, Montgomery, AL, for plaintiff.

Richard H. Gill, John Fairley McDonald, III, Montgomery, AL, for defendant.

### MEMORANDUM OPINION[1]

DE MENT, District Judge.

This matter is presently before the court on Defendant General Electric Co.'s Motion for Summary Judgment filed December 16, 1993. General Electric Co. filed a supporting brief contemporaneously with its Motion for Summary Judgment. On January 10, 1994, Plaintiff filed a Response in Opposition to General Electric Co.'s motion. General Electric Co. replied to Plaintiff's response on January 26, 1994. For reasons set forth herein, Defendant's Motion for Summary Judgment is due to be granted.

### Jurisdiction and Venue

Jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332. Also, because Plaintiff alleges that Defendants violated Title VII of the United States Code, 42 U.S.C. § 2000e *et seq.*, jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

---

1. This is a consolidated case containing Civil Actions CV–92–D–999–N and CV–94–D–611–N. The former involves claims of retaliatory discharge and civil conspiracy actions, brought pursuant to Alabama Code, § 25–5–11.1, and the later presents a claim of racial discrimination, brought under 42 U.S.C. § 2000e *et seq.*, Title VII. This memorandum opinion addresses Plaintiff's claims of retaliatory discharge and civil conspiracy as this is the focus of Defendant's motion for summary judgment.

Personal jurisdiction and venue are not contested.

### Factual Background

On February 17, 1986, Defendant General Electric Co. (hereinafter "GE") hired Eugene H. Phillips (hereinafter "Phillips") as a mechanical maintenance mechanic at its Burkville, Alabama facility. Shortly after being hired, GE sent Phillips to Mount Vernon, Indiana to receive training for approximately six months. Plaintiff contends and GE denies that GE's purpose for requiring him to undergo the training in Mount Vernon was to prepare Plaintiff for assisting in maintaining the Burkville plant. Plaintiff also asserts that one of his express job duties was to train new mechanics in Plaintiff's department. GE denies that Plaintiff was appointed to train new employees.

In December, 1989, an African–American employee was transferred to the division in which Phillips worked. Phillips claims that prior to said transfer, there were no African–American employees working in the division. Plaintiff alleges that he began assisting and training the African–American employee as he had done with all white employees. Phillips contends that his supervisor, Terry Jacks ("Jacks"), invariably encouraged assistance and training for newly hired or transferred whites; however, Jacks allegedly discouraged a similar training and/or assistance for the black transferee.

Plaintiff allegedly befriended the African–American transferee and attempted to assist him, over the alleged objections of his supervisor. Plaintiff contends that as a result of his benevolence, Jacks retaliated by deliberately placing Plaintiff and the new transferee in unsafe areas and forced them to discharge their employment duties in environments which violated GE's safety rules and regulations.

Plaintiff contends that he repeatedly reported these as well as other unsafe practices to GE's management personnel.[2] Plaintiff asserts that he was persistent in his efforts to bring the safety violations and unsafe conditions to GE's attention. Phillips claims that he was told by GE's high officials that nothing could be done to rectify the problems of which he complained.

On May 2, 1991, Phillips delivered a letter regarding the violations of GE's safety ordinances to GE's safety manager for the Burkville plant. In said letter, Plaintiff cited several dates and specific instances of alleged violations along with reports of actual injuries and explanations of injuries which could have resulted from the violations.[3] Plaintiff contends that he received no response from the Burkville facility safety manager. Phillips sent another letter to GE pointing out the violations and the dangers associated with such safety violations on May 16, 1991. GE does not deny that the two letters were indeed delivered; however, GE denies that the contents of the letters are true.

GE's safety director responded in writing to Phillips' notices of alleged safety violations on June 17, 1991. Phillips contends that GE's safety director chastised him for communicating by registered mail. Phillips also states that said responsive letter provided that Defendants Jacks and John Wilhite (Wilhite) had been interviewed and reports revealed that the defendants acted properly. Plaintiff contends that this an attempt by GE to conceal the actual and potential health-threatening safety violations cited in his report. GE terminated Phillips on June 26, 1991. Subsequently, Plaintiff filed a suit in

---

2. Plaintiff claims that he informed GE supervisors of the following intentional/willful violations of company policies: chemicals being placed in the African–American's clothing; in October or November, 1989, Wilhite and Jacks, ordered Plaintiff and others to engage in an activity which caused the ambient chlorine level to rise to an unsafe mark; in February, 1990, workers other than Plaintiff received chemical burns after Wilhite and Jacks ordered Plaintiffs and other employees to open unflushed and uncleaned lines; in October, 1990, an employee received an

acid burn after Plaintiff and at least one other employee were ordered to perform work on a leaking sulfuric acid line; and in April 1991, Plaintiff and other employees were exposed to unsafe levels of chlorine for a potentially health-threatening period of time. *See* Complaint, pp. 3–6.

3. Plaintiff contends that he asserted the same violations as previously enumerated in footnote 1.

the Circuit Court of Lowndes County, Alabama alleging that said termination was a retaliatory response to his voicing disapproval of the firm's safety violations. In December, 1991, Plaintiff amended his complaint to add a claim of civil conspiracy among GE's supervisors to discharge Plaintiff. Defendants filed a notice of removal (predicated on diversity jurisdiction) to this court on August 14, 1992. Plaintiff brought his action pursuant to Alabama Code § 25–5–11.1 claiming retaliatory discharge in response to Plaintiff's reporting violations of the company's safety codes.

Plaintiff also filed charges of discrimination/retaliation with the EEOC on May 1, 1991, and December 23, 1992. The EEOC issued a "Determination" on July 9, 1993, finding that there is reasonable cause to believe that Phillip's charges of hostile work environment, discrimination and retaliation against GE were valid.

Contrarily, GE contends that Plaintiff's discharge stemmed from Plaintiff's poor work performance and failure to conform to the terms and conditions of his employment. Furthermore, GE claims that its discharge of Plaintiff is not causally related to any letters drafted by Plaintiff. GE also states that the untruthfulness of the letters constituted insubordination, and as such, would have presented sufficient ground to justify Plaintiff's termination. Moreover, GE contends that Plaintiff's civil conspiracy claim is not actionable. Finally, defendant denies that it maintains a hostile work environment.

On December 16, 1993, Defendant filed its motion for summary judgment. Defendants allege that Plaintiff's action under *Alabama Code,* § 25–5–11.1 is not actionable because this claim is preempted by federal law. GE also claims that the civil conspiracy allegation based on the retaliatory discharge claim brought pursuant to § 25–5–11.1 is likewise not viable. Thus, GE contends that it is entitled to judgment as a matter of law on these two claims.

### Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion & Analysis

■ The United States Supreme Court has held that preemption may be either express or implied and is compelled whether Congress' directive is expressly articulated or implicitly contained in a statute's structure and purpose. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983); *Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Implied preemption may be manifested in at least two

forms: (1) field preemption, where the plan of federal regulation is " 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' " *de la Cuesta,* 458 U.S. at 153, 102 S.Ct. at 3022 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); and (2) conflict preemption, "compliance with both federal and state regulations is a physical impossibility," *Gade v. National Solid Wastes Management Association,* 505 U.S. 88, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963)), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade,* 505 U.S. at ——, 112 S.Ct. at 2383 [citations omitted].

More pointedly, the United States Supreme Court has held that "nonapproved state regulation of occupational safety and health issues for which a federal standard is in effect is impliedly preempted as in conflict with the full purposes and objectives of the OSH Act." *Gade,* —— U.S. at ——, 112 S.Ct. at 2383. Section 18(b) of the OSHA requires a State to acquire prior approval of its occupational safety and health plan from the Secretary of Labor. 29 U.S.C. § 667(b).[4]

In *Gade,* the Court ruled that Illinois laws regulating the training, testing, and licensing of hazardous waste site workers were preempted because Illinois neglected to procure prior approval from the Secretary of Labor in an area concerning occupational safety and health where federal standards already existed. The *Gade* Court rejected the Illinois Environmental Protection Agency's (hereinafter the "IEPA") argument that State occupational and safety regulations are not preempted where such regulations merely supplement, and do not conflict with, existing federal regulation(s). 505 U.S. at ——– ——, 112 S.Ct. at 2383–85. The Court reasoned that "the OSH Act as a whole evidences Congress' intent to avoid subjecting workers and employers to duplicative regulation...." *Id.* at ——, 112 S.Ct. at 2384.

The *Gade* Court also noted that dual impact state regulations[5] cannot escape the preemptive grasp of § 18(b). 505 U.S. at ——, 112 S.Ct. at 2387. The Court adopted the reasoning of the Court of Appeals below and reiterated, "[i]t would defeat the purpose of section 18 if a state could enact measures stricter than OSHA's and largely accomplished through regulation of worker health and safety simply by asserting a non-occupational purpose for the legislation." *Id.* (quoting *National Solid Wastes Management v. Killian,* 918 F.2d 671, 679 (7th Cir.1990)). The Court in *Gade* also stated, "[w]hatever the purpose or purposes of the state law, preemption analysis cannot ignore the effect of the challenged state action on the pre-empted field." 112 S.Ct. at 2387.

In the matter presently before the court, GE contends that *Alabama Code,* § 25–5–11.1 is preempted by OSHA. Consequently, GE asserts that it is entitled to judgment as a matter of law on Plaintiff's retaliatory discharge claim. Even though the court finds that the OSHA does not preempt Alabama Code, § 25–5–11.1, GE is entitled to judgment as matter of law on Plaintiff's section 25–5–11.1 claim.

■ Section 25–5–11.1 of the *Alabama Code* provides:

"[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of Section 25–5–11."

---

**4.** Section 18(b) of the OSHA provides:
[a]ny State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated.... shall submit a State plan for the development of such standards and their enforcement.

29 U.S.C. § 667(b).

**5.** Dual impact regulations are those which affect occupational safety and health but for which the legislating bodies articulate a nonoccupational safety and health purpose. *See Gade,* 505 U.S. at ——, 112 S.Ct. at 2387.

Defendant asserts that a federal standard currently exists for asserting claims against employers for retaliatory acts executed in response to filing a written violation of an occupational safety and health regulation. Pursuant to 29 U.S.C. § 660(c)(2),

> [a]ny employee who believes that he has been discharged or otherwise discriminated against by any person.... may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate.

Section 660(c) further provides that the Secretary of Labor determines if a retaliation claim warrants judicial action.

The court agrees with Defendant's statement of the law but dissents from its application thereof. According to section 4(b)(4) of OSHA, the Act does not "supersede or in any manner affect any workmen's compensation law or.... enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4).

■ The portion of *Alabama Code*, § 25–5–11.1 at issue gains its purpose and force from subdivision (c)(4) of Section 25–5–11. This provision provides in relevant part that:

> [w]illful and intentional violation of a specific written safety rule of the employer after written notice to the violating employee by another employee who, within six months after the date of receipt of the written notice, suffers injury resulting in death or permanent disability as a proximate result of the.... violation.

As can be gleaned from the foregoing statutory excerpt, the subject Alabama provision pertains to employee injuries arising out of the employment context. Therefore, the court finds that *Alabama Code*, § 25–5–11.1 fits neatly and comfortably within OSHA's saving clause and therefore is not preempted by OSHA. As a result of the foregoing finding, the court concludes that prior approval of Section 25–5–11.1 by the Secretary of Labor is not required.[6]

■ However, the court finds that Plaintiff may not maintain a cause of action under *Alabama Code*, § 25–5–11.1. In unequivocal terms this provision states that the reporting employee must incur an injury resulting in death or permanent disability. In essence, section 25–5–11.1 is an extension of Alabama's Workers' Compensation Act, which contemplates physical injury to the complaining party.[7] Since Plaintiff has conceded that he sustained no physical injury from the occupational safety and health violations that form the bases for this action, the court finds that Defendant GE's motion for summary judgment on Plaintiff's *Alabama Code*, § 25–5–11.1 claim is due to be granted.

■ Plaintiff next contends that GE, through its agents, conspired or combined for the unlawful purpose of terminating Plaintiff because Plaintiff reported violations of the company's occupational safety and health regulations. Under Alabama law, a civil conspiracy requires "a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means." *Nelson v. University of Alabama System*, 594 So.2d 632, 634, (Ala. 1991) *cert. denied*, —— U.S. ——, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992). The Alabama Supreme Court has held that "a conspiracy itself furnishes no cause of action." *Allied Supply Company, Inc. v. Brown*, 585 So.2d 33, 36 (Ala.1991). Moreover, "[t]he gist of the action is not the conspiracy but the underlying wrong that was allegedly commit-

---

**6.** Defendant argues that (since plaintiffs alleging violations of occupational safety and health regulations are not required to strictly conform to the filing requirements of subsection (c)(4) of Section 25–5–11 before bringing an action under Section 25–5–11.1) *Alabama Code*, § 25–5–11.1 is somehow subject to the preemptive effect of OSHA. The court points out that no action may be brought without allegations of, at least, a perceived injury. OSHA's saving clause permits states to enact legislation to redress injuries arising from the employment setting.

**7.** The court notes that the Alabama Workers' Compensation Act is embodied in Alabama Code, § 25–5–1 *et seq.*

ted," *Massengill v. Malone Freight Lines, Inc.*, 538 So.2d 784, 787 (Ala.1988); *Sadie v. Martin*, 468 So.2d 162, 165 (Ala.1985) (citing *O'Dell v. State*, 270 Ala. 236, 117 So.2d 164 (1959)), for "[i]f the underlying cause of action is not viable, the conspiracy claim must also fail." *Id.*

As set forth above, Plaintiff's claim pursuant to Alabama Code, § 25–5–11.1 is not actionable. Therefore, the court finds that Defendant GE's motion for summary judgment on Plaintiff's conspiracy action is appropriate.

### *Conclusion*

For the reasons articulated above, Plaintiff's Alabama Code, § 25–5–11.1 claim is not actionable. Accordingly, the Court finds that Defendant's motion for summary judgment on this claim is due to be granted. Furthermore, the court finds that Defendant's motion for summary judgment on Plaintiff's civil conspiracy claim is due to be granted.

A judgment in accordance with this memorandum opinion shall be entered separately.